ACCEPTED
05-15-00768-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
8/3/2015 3:25:42 PM
LISA MATZ
CLERK

**ORAL ARGUMENT REQUESTED**

# No. 05-15-00768-CV

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS

8/3/2015 3:25:42 PM

LISA MATZ
Clerk

_____

**In The COURT OF APPEALS
FIFTH DISTRICT OF TEXAS AT DALLAS**

_____

**DREAM CREEK ENTERPRISES, INC. and
RAMEY J. KEETH,**

                            **Appellants,**

*vs.*

**BBL BUILDERS, L.P.,**

                            **Appellee.**

_____

**Appeal from the 68th Judicial District Court
of Dallas County, Texas, Cause No. DC-14-13721
Honorable Martin Hoffman, Presiding Judge**

_____

**APPELLANTS' OPENING BRIEF**

_____

Daniel L. Bates
State Bar No. 01899900
dbates@deckerjones.com
Frank M. Newman, Jr.
State Bar No. 14970500
fnewman@deckerjones.com
Jake L. Ramsey
State Bar No. 24083705
jramsey@deckerjones.com
Molly Johnson
State Bar No. 24092590
mjohnson@deckerjones.com
**DECKER JONES, P.C**.
801 Cherry St., Mail Unit #46
Fort Worth, Texas 76102-6836
817-336-2400 (Telephone)
817-336-2181 (Facsimile)
**ATTORNEYS FOR APPELLANTS**

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to TEXAS RULES OF APPELLATE PROCEDURE 38.1(a), the following is a complete list of all parties to the trial court's judgment and the names and addresses of all counsel:

| | | |
|---|---|---|
| **Appellants:** | Dream Creek Enterprises, Inc. (hereinafter referred to as "Dream Creek") | **Trial and Appellate Counsel:** |
| | | Daniel L. Bates |
| | | dbates@deckerjones.com |
| | Ramey J. Keeth, individually (hereinafter referred to as "Keeth") | Frank M. Newman, Jr. |
| | | fnewman@deckerjones.com |
| | | Jake L. Ramsey |
| | | jramsey@deckerjones.com |
| | | Molly Johnson |
| | | mjohnson@deckerjones.com |
| | | |
| | | **DECKER JONES, P.C.** |
| | | 2000 Burnett Plaza |
| | | 801 Cherry Street |
| | | Mail Unit #46 |
| | | Fort Worth, Texas 76102 |
| | | 817-336-2400 (Telephone) |
| | | 817-336-2181 (Facsimile) |
| | | |
| **Appellee:** | BBL BUILDERS, L.P. (hereinafter referred to as "BBL") | **Trial and Appellate Counsel:** |
| | | Steven H. Thomas |
| | | sthomas@mcslaw.com |
| | | Jennifer M. Larson |
| | | jlarson@mcslaw.com |
| | | |
| | | **McGUIRE, CRADDOCK & STROTHER, P.C.** |
| | | 2501 N. Harwood |
| | | Suite 1800 |
| | | Dallas, Texas 75201 |
| | | 214-954-6800 (Telephone) |

214-954-6868 (Facsimile)

**Receiver:**     Albert "Tre" Black III

**Counsel for Receiver:**

Kevin Buchanan, Esq.
kbuchanan@kevinbuchananlaw.com
Matthew McDougal, Esq.
mmcdougal@kevinbuchananlaw.com

**KEVIN BUCHANAN &**
  **ASSOCIATES, P.L.L.C.**
900 Jackson Street, Suite 350
Dallas, TX 75202

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL.............................................................. i

TABLE OF CONTENTS....................................................................................... iii

INDEX OF AUTHORITIES ................................................................................ vi

STATEMENT REGARDING ORAL ARGUMENT.......................................... xi

STATEMENT OF THE CASE............................................................................ xii

STATEMENT OF JURISDICTION ................................................................. xiv

ISSUES PRESENTED ........................................................................................xv

STATEMENT OF FACTS ....................................................................................1

SUMMARY OF THE ARGUMENT ....................................................................9

STANDARD OF REVIEW ................................................................................10

ARGUMENT ......................................................................................................11

    I.     The Trial Court Lacked Authority To Appoint A Receiver ..............11

      A.   The Court Lacked Authority to Appoint a Receiver
          Because the  Parties Had Selected the Arbitral Forum .....................12

         (1)   Arbitral Forum Selection Severely Limits A Trial Court's
              Authority..................................................................................13

      B.   Law Of The Arbitral Forum Does Not Authorize A Judicial
          Receivership .......................................................................................17

         (1)   Receivership Was Not An Agreed Arbitration Remedy .............17

         (2)   No Contractual Agreement For A Judicial Receivership
              Exists ......................................................................................17

         (3)   The AAA Rules Do Not Provide For A Judicial
              Receivership ............................................................................18

      C.   Law Supporting Arbitration Does Not Authorize Judicial
          Receivership .......................................................................................20

          (1)   The FAA Does Not Authorize A Judicial Receivership ...............21

         (2)   The TAA Does Not Authorize Judicial Receiverships
              Because A Receivership Is Not Among Orders
              Authorized by § 171.086...............................................................26

D. Neither Remedies Code Chapter 64 Nor Business Organizations Code Chapter 11 Authorize A Judicial Receivership .................................................................32

(1) The Trial Court Is Not A Court Of Competent Jurisdiction Under Texas Civil Practice & Remedies Code § 64.001(a) ...............................................32

(2) The Trial Court Lacked Jurisdiction Under Texas Business Organizations Code § 11.404 ......................34

E. BBL Does Not Have Standing To Bring A Trust Fund Act Claim ......................................................................38

(1) A Texas Construction Trust Fund Act Claim May Only Be Asserted By Downstream Subcontractors, Not Upstream Payors .................................................38

(2) Lack Of Standing Results In Trial Court Lacking Authority To Appoint A Receiver. ..........................43

F. Probable Conflict, Interference, And Uncertainty Between Arbitration And Judicial Receivership Weighs Against Authorizing Imposition ..............................................44

II. The Trial Court Abused Its Discretion In Appointing A Receiver. .........46

A. BBL failed to establish that Dream Creek was in litigation and that the action in litigation was an action by an owner or a member of the domestic entity as required by § 11.404(a)(1) of the Tex. Bus. Org. Code .................................................47

(1) BBL's Damages Suit Is Not An Action By A Domestic Entity Owner Required By § 11.404(a)(1) Of The Tex. Bus. Org. Code ......47

(2) BBL Is A Claimant, Not A Creditor, Of Dream Creek Or Keeth ..........................................................49

B. The Judicial Receivership Was Not Imposed To Prevent Arbitration Disorder, Interference, Or Delay .................52

C. Dallas County Is An Improper Venue To Order A Receivership Over Dream Creek ...................................55

D. BBL Has No Joint Ownership Or Interest In The Property Or Fund ..........................................................................55

E. BBL Failed To Prove Insolvency, Dissolution, Or Forfeiture ...........56

iv

**(1) There Is No Evidence of Dissolution, Forfeiture, Insolvency, Or Imminent Insolvency Of Dream Creek** ....................................................57

**(2) Even If Competent Evidence Exists, Case Law Opposes A Judicial Receivership On These Facts.** ...................................................58

**F.     Equity Cannot Support Receivership Absent Fulfilling Statutory Requirements** ........................................................................59

**CONCLUSION** ............................................................................................60

**PRAYER** ......................................................................................................61

**CERTIFICATE OF COMPLIANCE** ..................................................................63

**CERTIFICATE OF SERVICE** ........................................................................64

**APPENDIX IN SUPPORT OF APPELLANTS OPENING BRIEF** ...............65

v

# INDEX OF AUTHORITIES

**Cases**

*A&J Printing, Inc. v. DSP Enters., L.L.C.*,
   153 S.W.3d 676, 680 (Tex. App.—Dallas 2004, no pet.) ...................................11

*Amegy Bank N.A. v. Monarch Flight II, LLC*,
   870 F. Supp. 2d 441, 452 (S.D. Tex. 2012) ........................................................18

*Austin Commer. Contrs., L.P. v. Carter & Burgess, Inc.*,
   347 S.W.3d 897 (Tex. App.—Dallas 2011, pet denied)...................................... xii

*Benefield v. State*,
   266 S.W.3d 25, 31 (Tex. App.—Houston [1st Dist.] 2008, no pet.)...................13

*BMC Software Belg., N.V. v. Marchand*,
   83 S.W.3d 789, 794 (Tex. 2002)........................................................................10

*Bocquet v. Herring*,
   972 S.W.2d 19, 21 (Tex. 1998)..........................................................................11

*CNOOC Southeast Asia Ltd. v. Paladin Res. (Sunda) Ltd.*,
   222 S.W.3d 889, 894(Tex. App.—Dallas 2007, pet. denied).............................11

*Comed Medical Systems, Co., Ltd. v. AADCO Imaging, LLC*,
   2015 Tex. App. LEXIS 1762 (Tex. App.—Austin 2015)
   (unpublished opinion) ........................................................................................14

*Continental Homes Co. v. Hilltown Property Owners Ass'n, Inc.*,
   529 S.W.2d 293 (Tex. Civ. App. Fort Worth 1975).............................................59

*Farrel Constr., Inc. v. Schreiber*,
   466 B.R. 903, 912 (S.D. Tex. Bankr. 2012) .................................................. 39, 42

*Finance Comm'n v. Norwood*,
   418 S.W.3d 566, 580 (Tex. 2013)......................................................................43

*Forest Oil Corp. v. McAllen*,
   268 S.W.3d 51, 56 (Tex. 2008).........................................................................14

*Gossett v. Hamilton*,
133 S.W.2d 297, 302 (Tex. Civ. App.—Fort Worth 1939)...................................58

*Greenland v. Pryor*,
360 S.W.2d 423 (Tex. Civ. App. San Antonio 1962)..........................................58

*Griggs v. Brewster*,
62 S.W.2d 980 (1933)..............................................................................58

*Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*,
304 F.3d 476, 487 (5th Cir. 2002) ........................................................ 23, 26, 29

*Haynsworth v. The Corp.*,
121 F.3d 956, 963 (5th Cir. 1997) ...............................................................16

*Heckman v. Williamson Cty.*,
369 S.W.3d 137, 150 (Tex. 2012)................................................................43

*Hines v. Villalba*,
231 S.W.3d 550, 552 (Tex. App.—Dallas 2007) ...............................................36

*Holladay v. CW & A, Inc.*,
60 S.W.3d 243, 245-46 (Tex. App.—Corpus Christi 2011, pet. denied) .............38

*Howsam v. Dean Witter Reynolds*,
537 U.S. 79, 85-86 ..................................................................................19

*Hunt v. Merchandise Mart, Inc.*,
391 S.W.2d 141 (Tex. Civ. App. —Dallas 1965), writ refused n.r.e. ..................58

*In re AIU Ins.*,
148 S.W.3d 109, 114, 121 (Tex. 2004).........................................................15

*In re Automated Techs., Inc.*,
156 S.W.3d 557, 559 (Tex. 2004).................................................................15

*In re Brown*,
441 S.W.3d 405, 407 (Tex. App.—Dallas 2013, no pet.) ...................................16

*In re D. Wilson Constr. Co.,*
  196 S.W.3d 774, 778-79 (Tex. 2006) ...................................................................27

*In re FC Stone, LLC,*
  348 S.W.3d 548, 551 (Tex. App.—Dallas 2011, no pet.) ....................................16

*In re Houston Pipe Line Co.*,
  311 S.W.3d 449, 450 (Tex. 2009).................................................................. 14, 31

*In re L&L Kempwood Assocs., L.P.*,
  9 S.W.3d 125, 127 (Tex. 1999)...................................................................... 22, 27

*In re Nexion Health at Humble, Inc.*,
  173 S.W.3d 67, 69 (Tex. 2005)...........................................................................22

*Jack B. Anglin, Co. v. Tipps*,
  842 S.W.2d 266, 269-70 (Tex. 1992) ..................................................................22

*Jackson v. Van Winkle*,
  660 S.W.2d 807, 810 (Tex. 1983).......................................................................57

*Kelleam v. Md. Cas. Co.*,
  312 U.S. 377, 381 (1941) .............................................................................. 24, 25

*Kneisley v. Intertex, Inc.,*
  797 S.W.2d 343 (Tex. App.—Houston [14th Dist.] 1990, no writ) ......................56

*Lively v. Carpet Servs., Inc.*,
  904 S.W.2d 868, 873 (Tex. App.—Houston [1st Dist.] 1995, writ denied ..........39

*McCraw v. Maris*,
  828 S.W.2d 756, 757 (Tex. 1992).......................................................................57

*Moses H. Cone Hospital v. Mercury Construction Corp.*,
  460 U.S. 1, 22 (1983)..........................................................................................14

*Mueller v. Beamalloy, Inc.*,
  994 S.W.2d 855, 861 (Tex. App.—Houston [1st Dist.] 1999, no pet.)................59

*Nexen, Inc. v. Gulf Interstate Eng'g Co.*,

224 S.W.3d 412, 417 (Tex. App.--Houston [1st Dist.] 2006, no pet.) ..................31

*Robax Corp. v. Prof'l Parks, Inc.,*
   2008 U.S. Dist. LEXIS 60626, 2008 WL 3244150 (N.D. Tex. 2008) .......... 40, 41

*Scherk v. Alberto-Culver Co.,*
   417 U.S. 506, 519 (1974)..................................................................... 15, 17

*Senter Invs., L.L.C. v. Amirali & Asmita Veerjee & Al-Waahid, Inc.,*
   358 S.W.3d 841, 844-45 (Tex. App.—Dallas 2012) ............................................14

*Smith Barney Shearson, Inc. v. Boone,*
   47 F.3d 750, 753-54 (5th Cir. 1995) .....................................................17

*Spiritas v. Davidoff,*
   459 S.W.3d 224, 231 (Tex. App.—Dallas 2015, no pet) .....................................11

*Transwestern Pipeline Co. v. Blackburn,*
   831 S.W.2d 72, 78 (Tex. App.—Amarillo 1992, orig. proceeding).....................14

*Tucker v. Baker,*
   214 F2d. 627, 632 (5th Cir. 1954) .....................................................25

*Wells Fargo Bank, N.A. v. Star Tex. Gasoline & Oil Distribs.,*
   2015 U.S. Dist. LEXIS 10673 (S.D. Tex. 2015) ......................................... 23, 24

*West Orange-Cove Consol. ISD v. Alanis,*
   107 S.W.3d 558, 583 (Tex. 2003)......................................................43

## Statutes

FAA, 9 U.S.C. § 16........................................................................ xii, 17, 26
Tex. Bus. Org. Code § 11.402 ........................................................... passim
Tex. Bus. Org. Code § 11.403 ........................................................... passim
Tex. Civ. Prac. & Rem. Code § 171.081 (West 2014) ...........................................27
Tex. Civ. Prac. & Rem. Code § 171.087 ...............................................21
Tex. Const. Art 5, § 6............................................................... xiii
Tex. Gov't Code § 22.221............................................................. xiii
Tex. Prop. Code § 162.001 *et seq.* (West 2013) .......................................38
Tex. R. App. P. 81(b) ....................................................................57
Tex. R. Evid. 901 ......................................................................58

Texas Business Organizations Code § 11.001(1) ......................................................51
Texas Business Organizations Code Chapter 11 ........................................ 17, 51, 55
Texas Business Organizations Code, Chapter 11 ........................................ xiv, 9, 12
Texas Civil Practice & Remedies Code § 171.001 et seq. ........................... x, 27, 29
Texas Civil Practice & Remedies Code § 171.086............................................ passim
Texas Civil Practice & Remedies Code § 51.014(a)(1) ................................. xii, xiii
Texas Civil Practice & Remedies Code § 64.001............................................ passim
Texas Civil Practice & Remedies Code, Chapter 64 ................................. xiv, 9, 12
Texas Construction Trust Fund Act.....................................................................17
Texas Rules of Appellate Procedure 38.1(a) ........................................................ i

**Other Authorities**

AAA Construction Industry Rules..........................................................................17
American Arbitration Association Areas of Expertise, Construction,
    https://www.adr.org/aaa/faces/aoe/cre/construction (last visited July 23, 2015)19

## STATEMENT REGARDING ORAL ARGUMENT

Appellants, Dream Creek and Keeth, respectfully request oral argument. This appeal arises from a series of hearings and proceedings resulting in an Order Appointing Receiver raising important issues regarding the authority of a trial court to impose a receivership on parties already engaged in arbitration. The prevalence of the use of the arbitral forum creates questions concerning the boundaries of the parallel use of the judicial forum to impose the very severe and harsh remedy of receivership important to litigants in this district and throughout the State of Texas. The paucity of case authority directly on the issues raised in this appeal, especially given their significance, convinces Appellants that oral argument may aid the Court in its decisional process.

# STATEMENT OF THE CASE

*Nature of the Case:*

This accelerated interlocutory appeal, or alternatively petition for writ of mandamus, tests whether a trial court had jurisdiction and, if so, properly imposed a judicial receivership over Dream Creek and Keeth, despite the fact that BBL and Dream Creek had selected the arbitral forum and were already in a pending binding arbitration.

*Arbitration is Initiated:*

BBL initiated an AAA arbitration of its claims of breach of contract and related causes of action against Dream Creek and Ramey Keeth, Dream Creek's President. Keeth, individually, was not a signatory and he contested arbitration in his arbitration answer filed with AAA.

*Trial Court Proceedings in 101st District Court:*

Despite the pending arbitration, BBL sued Dream Creek and Ramey Keeth for damages via Plaintiff's Original Petition And Request for Disclosures, assigned to the 101st District Court of Dallas County, Texas as cause number DC-14-05976. BBL filed an Emergency Motion for Accounting, Appointment Of A Receiver, And Expedited Discovery On The Status of Trust Funds. Responding to the lawsuit, Dream Creek and Keeth objected to improper venue; moved to transfer venue to Parker County, the principal place of business of Dream Creek and Keeth's place of residence; and answered with denials and affirmative defenses. BBL Supplemented its Emergency Motion. Dream Creek and Keeth responded to BBL's Motion for Accounting and Receiver asserting, *inter alia*, lack of jurisdiction and improper venue. The 101st District Court deferred consideration of a receiver but, *sua sponte*, appointed an auditor. Thereafter, the 101st District Court, *sua sponte*, issued a temporary injunction prohibiting Dream Creek and Keeth from using bank accounts without court order approving same and denied a receiver, without prejudice to reconsideration. The 101st District Court thereafter transferred this case to the 415th District Court of Parker County.

*Proceedings in the 415th District Court:*

BBL moved to compel Keeth, a non-signatory, to join the pending arbitration. The 415th District Court compelled Keeth to arbitrate; increased the amount of the bond on the temporary

xii

injunction; and retained the temporary injunction and jurisdiction of the Court under Subchapter D of Chapter 171 of the Texas Civil Practice & Remedies Code for support of the pending arbitration. Thereafter, based on venue in Dallas County for the pending arbitration, per the arbitration agreements, this case was transferred back to Dallas County.

*Proceedings in the 68th District Court:*    Upon return, this case was assigned to the 68th District Court and given cause number DC-14-13721. BBL renewed its request for appointment of a receiver and, in addition, sought to hold Ramey Keeth in contempt for violation of the temporary injunction. BBL made a motion to set pending motions for hearing which the court docketed for May 29, 2015.

*68th Trial Court Disposition:*    After the hearing on May 29, 2015, the 68th District Court appointed a receiver over Dream Creek, including vesting in the Receiver possession of a portion of a personal bank account of Keeth. The Order Appointing Receiver was signed on June 1, 2015, a true and correct copy of which is attached hereto as **Exhibit "A."** Dream Creek and Keeth timely filed their notice of appeal of this Order on June 19, 2015.

## STATEMENT OF JURISDICTION

The Order Appointing Receiver, the subject of this appeal, was made expressly pursuant to three statutes: (1) Texas Civil Practice & Remedies Code § 64.001(a), (3), (5), and (6); (2) Texas Business & Commerce Code § 11.404(a)(1)(A), (C), and (D); and (3) Texas Civil Practice & Remedies Code § 171.086. (CR p. 255) Accordingly, this Court of Appeals has jurisdiction over this interlocutory appeal pursuant to Texas Civil Practice & Remedies Code § 51.014(a)(1). Because this appeal challenges the jurisdiction of the trial court, this Court of Appeals always has jurisdiction to determine whether the trial court had jurisdiction.

At the time the trial court appointed the receiver, all the parties were in a pending binding arbitration pursuant selection of the arbitral forum by BBL and Dream Creek. Because interstate commerce is involved, the Federal Arbitration Act ("FAA") applies. Reviewing courts, including this Court, have held interlocutory appeals of orders made by the trial court under the FAA, 9 U.S.C. § 16, are more restrictive than those brought applying only Texas law. *See Austin Commer. Contrs., L.P. v. Carter & Burgess, Inc.*, 347 S.W.3d 897 (Tex. App.—Dallas 2011, pet denied).

Appointment of a receiver is not listed in § 16 of the FAA, raising the issue of whether Texas Civil Practice & Remedies Code § 51.014(a)(1), permitting an

interlocutory appeal from an order appointing a receiver, conflicts with and is therefore preempted by the FAA. This issue is confounded by the fact that there is no provision in the FAA for a receiver in the first instance. Thus far, research has failed to reveal any case authority answering this important jurisdictional question.

In the event this Court may determine that the FAA preempts the application of Texas Civil Practice & Remedies Code § 51.014(a)(1), with the result that this Court does not have jurisdiction over this interlocutory appeal, Dream Creek and Keeth request that this Court exercise its original jurisdiction and consider this Opening Brief as Dream Creek and Keeth's request for a Writ of Mandamus to order the trial court to vacate the Order Appointing Receiver, pursuant to Texas Constitution Article 5, Section 6 and Texas Government Code § 22.221.

## ISSUES PRESENTED

Issue No. 1: Did the trial court have authority to establish a judicial receivership when:

    (a)    BBL and Dream Creek had selected the arbitral forum and all parties were in binding arbitration at the time the judicial receivership was established;

    (b)    In connection with selecting arbitration, there was no agreement that receivership would be an available remedy;

    (c)    Neither the Federal Arbitration Act nor the Texas General Arbitration Act authorizes imposition of a judicial receivership over parties in arbitration;

    (d)    The trial court was not a court of competent jurisdiction and not authorized to appoint a receiver under Chapter 64 of the Texas Civil

Practice & Remedies Code or under Chapter 11 of the Texas Business Organizations Code because of the forum selection for arbitration;

(e) BBL did not have standing to assert the Texas Construction Trust Fund Act as the ground supporting the judicial receivership; and

(f) The conflict, interference, and uncertainty between the arbitration and judicial receivership weighs against authorizing imposition of same.

Issue No. 2: Did the trial court abuse its discretion in appointing a receiver when:

(a) BBL failed to (i) establish that Dream Creek was in litigation and that the action in litigation was an action by an owner or a member of the domestic entity as required by § 11.404(a)(1) of the Texas Business Organizations Code, and (ii) prove it was a creditor of Keeth or had any justiciable interest in his personal bank account;

(b) BBL failed to plead or prove a receivership was needed to permit the pending arbitration: (1) to be conducted in an orderly manner; and (2) to prevent improper interference or improper delay of the arbitration;

(c) Texas Civil Practice & Remedies Code § 64.071 requires that an action to have a receiver appointed for a corporation with property in this state be brought in Parker County, the county of the principal office of Dream Creek;

(d) There is no evidence or insufficient evidence to support the receivership under Texas Civil Practice & Remedies Code § 64.001(a)(3);

(e) There is no evidence or insufficient evidence to support the receivership under Texas Civil Practice & Remedies Code § 64.001(a)(5); and

(f) Rules of equity do not permit appointing a receiver if statutory requirements for such appointment are not fulfilled.

xvi

_____

## In The COURT OF APPEALS
## FIFTH DISTRICT OF TEXAS AT DALLAS

_____

## DREAM CREEK ENTERPRISES, INC. and
## RAMEY J. KEETH,

**Appellants,**

*vs.*

## BBL BUILDERS, L.P.,

**Appellee.**

_____

**Appeal from the 68th Judicial District Court
of Dallas County, Texas, Cause No. DC-14-13721
Honorable Martin Hoffman, Presiding Judge**

_____

## APPELLANTS' OPENING BRIEF
_____

TO THE HONORABLE JUSTICES OF THIS COURT OF APPEALS:

Dream Creek Enterprises, Inc. and Ramey J. Keeth ("Appellants") respectfully submit their Brief, and in support would respectfully show the Court as follows:

## **STATEMENT OF FACTS**

BBL is a contractor headquartered in Latham, New York that entered into a Subcontract Agreement with a framing subcontractor, Dream Creek, a Texas corporation headquartered in Springtown, Parker County, Texas, for each of four

1

construction projects. (CR pp. 17-179) Each Subcontractor Agreement was executed by Dream Creek through its President, Ramey Keeth. (CR pp. 28, 58, 109, 140) In each Subcontractor Agreement, Dream Creek contracted to provide wood framing for four construction projects: (1) Airline Ocean Drive in Corpus Christi, Texas ("Airline") (CR pp. 17, 19); (2) Bay Vista Apartments Phase II in Corpus Christi, Texas ("Bay Vista") (CR pp. 17, 50); (3) Mosaic Apartments, a LEVEL Community in Oklahoma City, Oklahoma ("Mosaic") (CR pp. 17, 100); and (4) Tradewinds Apartments at Gateway Plaza in Midland, Texas ("Tradewinds"). (CR pp. 17, 131)

Each Subcontractor Agreement between BBL and Dream Creek has the identical arbitration agreement, in pertinent part, as follows:

> "12.1 Any controversy or claim between Contractor and Subcontractor arising out of or related to this AGREEMENT, or the breach thereof, shall be settled by arbitration, which shall be conducted in the same manner and under the same procedure as provided in the Contract Documents with respect to claims between Owner and Contractor except that a decision by the Initial Decision Maker or Architect shall not be a condition precedent to arbitration. If the Contract between Owner and Contractor does not provide for arbitration or fails to specify the manner and procedure for arbitration, it shall be conducted in accordance with Construction Industry Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise.
>
> 12.2 The venue for any arbitration proceedings shall be the County of Dallas, State of Texas."

(CR pp. 27, 57, 108-9, 139-40)

2

Except for the Mosaic Subcontractor Agreement, choosing Oklahoma law, each Subcontractor Agreement provides that: "Texas law shall govern and apply to interpretations of this Agreement." (CR pp. 26, 56, 108, 138)

After disputes arose between BBL and Dream Creek, arbitration was initiated by BBL with the American Arbitration Association ("AAA") on May 5, 2014. (CR p. 9) BBL initiated arbitration not only with Dream Creek, a signatory to each Subcontractor Agreement, but BBL also named Keeth, despite the fact that, individually, he was not a signatory to any Subcontractor Agreement. (CR pp. 28, 58, 109, 140)

On June 3, 2014, BBL filed this damage suit against Dream Creek and Keeth in Dallas County, assigned to the 101st District Court as cause number DC-14-05976. (CR pp. 306-492) BBL pleaded that it had initiated arbitration with Dream Creek and Keeth; that in Defendants' arbitration answer, Keeth denied he was obligated to arbitrate; and that BBL does not want to arbitrate "either." (CR pp. 307-08) BBL then pleaded its conclusion that "the parties appear to be in agreement that they do not wish to be in arbitration." (CR p. 308) BBL advised that it would ask AAA to place the arbitration in abeyance. *Id.*

On these facts, BBL pleaded for damages allegedly caused by Dream Creek and Keeth and stated multiple causes of action. (CR pp. 311-14) BBL did not seek appointment of a receiver in its original petition, however. (CR pp. 306-16)

3

On June 5, 2014, BBL filed its Emergency Motion for Accounting, Appointment Of A Receiver, And Expedited Discovery On The Status Of Trust Funds. (CR pp. 493-500) Therein, BBL requested a receiver on a single ground, citing repealed Article 7.05 of the Texas Business Corporation Act as authority, asserting that Dream Creek was insolvent or in imminent danger of insolvency. (CR p. 495) BBL's motion did not have any pleading or proof that: (1) any request for receivership had been made in the arbitration; (2) that the Arbitrator had appointed a receiver so that the trial court was being requested to enforce the Arbitrator's appointment; or (3) that the appointment was being sought to support the arbitration. *Id.* The single ground asserted in BBL's motion was, thus, solely in connection with its damage suit against Dream Creek and Keeth. *Id.*

By a letter dated June 5, 2014, BBL's counsel advised AAA of the filing of this suit and requested the arbitration be held in abeyance. (CR pp. 182-83) There is no evidence in the Record on Appeal that AAA took any action on BBL's abeyance request.

On June 18, 2014, Dream Creek and Keeth filed their Defendants' Motion to Transfer Venue and Original Answer in which they generally denied the allegations BBL made in its original petition, which would include BBL's assertions about the pending arbitration. (CR pp. 612-16) They also filed a Response to Emergency Motion for Accounting, Appointment Of A Receiver, And

Expedited Discovery On The Status Of Trust Funds. (CR pp. 617-22) Dream Creek and Keeth's response, *inter alia*, made a Plea to the Jurisdiction based on the fact that only a court in the county in which the principal place of business of a domestic corporation is located is authorized to impose a judicial receivership pursuant to Texas Business Organizations Code § 11.404. (CR p. 617). Dream Creek and Keeth also made objections to various portions of the Declaration of Chad Courty, as well as to many of the exhibits, the principal support for BBL's request for appointment of a receiver. (CR pp. 618-19)

Later on June 18, 2014, BBL filed a Supplement To Emergency Motion For Accounting, Appointment Of A Receiver, And Expedited Discovery On The Status Of Trust Funds. (CR pp. 501-611) Therein, BBL asserted that in the arbitration a preliminary conference with the Arbitration Administrator included a discussion of the need for information BBL was seeking. (CR p. 501) However, no additional ground of authority supporting BBL's request for receiver was included in BBL's supplement. (CR pp. 501-611)

The 101st District Court heard BBL's motion for receiver on June 18, 2014 and, by order signed on June 20, 2014, deferred the issue of whether a receiver should be appointed; *sua sponte* appointed an auditor; ordered production of documents; and set July 9, 2014 as the date for the auditor's report. (CR pp. 623-25) Although the order appointing an auditor has most of the same vices as the

Order Appointing Receiver, no interlocutory appeal is permitted from that order. In neither its motion nor supplement did BBL plead and prove that discovery had been ordered in the arbitration so that BBL was seeking enforcement of an arbitration discovery order. (CR pp. 493-500, 501-611) The discovery ordered concerned merits of the claims in arbitration, rather than validity of the agreement to arbitrate. Thus, the 101st District Court did not have jurisdiction to order any such discovery. Regardless, through prior counsel, Appellants agreed via a Rule 11 Agreement to produce documents and information to the court-appointed auditor. (CR pp. 626-28)

On July 11, 2014, BBL filed Plaintiff's First Amended Petition, the live pleading of BBL at the time the 68th District Court appointed the receiver. (CR pp. 629-804) In its amended petition, BBL asserted entitlement to have a receiver appointed pursuant to § 11.403 of the Texas Business Organizations Code. (CR p. 638-39) BBL pleaded no other ground supporting its request for appointment of a receiver. The single ground asserted in BBL's amended petition continued to be made solely in connection with its damage suit against Dream Creek and Keeth. (CR pp. 629-804)

Shortly after amending its pleadings, BBL filed a Brief In Support Of Court's Authority To Appoint A Receiver in the 101st District Court. (CR pp. 805-815) In its brief, BBL asserted the trial court had the authority to grant its motion

6

and appoint a receiver pursuant to § 64.001 of the Texas Civil Practice & Remedies Code and §§ 11.402 and 11.403 of the Texas Business Organizations Code. (CR pp. 807-08)  As with its pleadings, motion, and supplement, BBL's trial brief is void of any consideration, briefing, or citation of authority on: (1) the effect of the choice of the parties for the arbitral forum; (2) their lack of agreement that receivership is a potential remedy either in arbitration or judicially; and (3) the fact that the trial court was being asked to establish a receivership in parallel to the pending arbitration.

On August 12, 2014, the 101st District Court granted Dream Creek and Keeth's motion to transfer venue to Parker County. (CR pp.11, 868)  After transfer, BBL moved the 415th District Court to compel Ramey Keeth to join the pending arbitration. (CR pp.7-183)  On September 2, 2014, Keeth, a non-signatory to the agreements to arbitrate, was compelled to join the pending arbitration for resolution of BBL's claims against him, individually. (CR p. 185)  Therefore, as of the time BBL renewed its request for a receiver, and the trial court appointed one, all parties in this case were and continue to be in the pending arbitration.

On September 10, 2014, BBL moved to transfer this case from Parker County to Dallas County. (CR pp. 186-90)  On September 17, 2014, original trial counsel for Appellants moved to withdraw and the 415th District Court granted the withdrawal motion on September 22, 2014. (CR pp. 191-93)  From September 22,

7

2014 through March 6, 2015, when Frank Newman of Decker Jones, P.C. entered our firm's appearance, Dream Creek and Keeth were not represented in the trial court. (CR pp. 195-96)  On October 30, 2014, the 415th District Court granted BBL's motion to transfer venue and transferred this case back to Dallas County. (CR p. 194)

On May 18, 2015, BBL filed its "Emergency Motion To Cancel Mediation And To Set Pending Motions For Hearing." (CR pp. 197-201)  In its prayer contained in this motion, BBL prayed that the trial court would enter an order: (1) granting the motion; (2) setting an emergency hearing on the Motion for Contempt, Motion to Dissolve, and Motion for Receiver; and (3) granting general relief. (CR p. 199)  In its motion, BBL reiterated and re-urged its motion under Chapter 64 of the Remedies Code and § 11.403 of the Business Organizations Code. (CR p. 199) On May 19, 2015, BBL filed a Notice of Hearing On Plaintiff's Emergency Motion to Cancel Mediation and to Set Pending Motions for Hearing for May 29, 2105. (CR pp. 202-203)  However, as with all its other pleadings, this motion is void of any consideration of any of the issues raised by the pending arbitration and the judicial receivership BBL sought in parallel thereto.

At the May 29, 2015 hearing, the 68th District Court announced it would appoint a receiver.  On June 1, 2015, the trial court signed the Order Appointing Receiver, establishing a judicial receivership over Dream Creek that included

8

vesting the receiver with possession over a portion of a personal deposit account of Keeth. (CR pp. 255-60) On June 19, 2015, Dream Creek and Keeth filed their Notice of Appeal of Order Appointing Receiver. (CR pp. 279-86)

## SUMMARY OF THE ARGUMENT

BBL and Dream Creek selected the arbitral forum to resolve their disputes. Selection of the arbitral forum significantly limited the jurisdictional authority of the trial court, especially because as part of the agreement to select arbitration there was no agreement that receivership would be an available remedy. Because the subject matter involves interstate commerce, the FAA applies, preempting conflicting provisions of Texas law, including the Texas Arbitration Act ("TAA.") Neither the FAA nor the TAA states that a trial court may impose a receivership on parties in arbitration.

Resulting from selection of the arbitral forum, and especially absent any agreement that receivership would be an available remedy in arbitration, the trial court was not a court of competent jurisdiction and not authorized under federal or Texas law to impose a judicial receivership on parties in arbitration. The trial court erred and abused its discretion in its findings that the Order Appointing Receiver was just and proper under (1) Chapter 64 of the Texas Civil Practice & Remedies Code, the source of general authority for imposition of judicial receiverships; (2) Chapter 11 of the Texas Business Organizations Code, applicable to domestic

9

corporations; and (3) Subchapter D of Chapter 171 of the Texas Civil Practice & Remedies Code, the TAA.

In the event this Court concludes the trial court had the authority to impose a judicial receivership, the trial court erred and abused its discretion in its Order Appointing Receiver. BBL failed to plead and prove several elements required by the statutes upon which BBL based its request for receivership and upon which the trial court expressly relied or which could sustain its appointment. Accordingly, there is no evidence or legally insufficient evidence to support the Order Appointing Receiver.

### STANDARD OF REVIEW

Generally, questions concerning whether a trial court has jurisdiction are reviewed *de novo*. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002) (jurisdictional holding in special appearance procedure that cases applying only an abuse of discretion standard were disapproved in favor of *de novo* review as a question of law). Where, as here, the jurisdictional issue is raised by the presence of a forum selection clause, arbitration in our case, the standard of review for rulings on forum selection clauses determining jurisdiction is instructive. Following *BMC Software*, this Court has held that in review of a trial court's ruling on jurisdiction based on a forum selection clause, factual findings for legal and factual sufficiency and legal conclusions made by the trial court are

10

reviewed *de novo*. *CNOOC Southeast Asia Ltd. v. Paladin Res. (Sunda) Ltd.*, 222 S.W.3d 889, 894 (Tex. App.—Dallas 2007, pet. denied) (citing *A&J Printing, Inc. v. DSP Enters., L.L.C.*, 153 S.W.3d 676, 680 (Tex. App.—Dallas 2004, no pet.)).

Absent any issue of whether the trial court had jurisdiction to appoint a receiver, this Court has held that a trial court's order appointing a receiver is reviewed on an abuse of discretion standard. *Spiritas v. Davidoff,* 459 S.W.3d 224, 231 (Tex. App.—Dallas 2015, no pet). If, despite the parties' selection of the arbitral forum and the pending arbitration, this Court determines that the trial court had the authority to appoint a receiver, the trial court's order is reviewed for abuse of discretion. "It is an abuse of discretion for a trial court to rule arbitrarily, unreasonably, or without regard to guiding legal principles, or to rule without supporting evidence." *Id.* (quoting *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) (internal citations omitted)). An appellate court's review of an order appointing a receiver focuses on whether the pleadings and evidence are sufficient to justify a receivership. *Benefield v. State*, 266 S.W.3d 25, 31 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

## ARGUMENT

### I. The Trial Court Lacked Authority To Appoint A Receiver.

Issue No. 1 (a)-(f) (Restated): Did the trial court have authority to establish a judicial receivership when:

11

(a)   BBL and Dream Creek had selected the arbitral forum and all parties were in binding arbitration at the time the judicial receivership was established;

(b)   In connection with selecting arbitration, there was no agreement that receivership would be an available remedy;

(c)   Neither the Federal Arbitration Act nor the Texas General Arbitration Act authorizes imposition of a judicial receivership over parties in arbitration;

(d)   The trial court was not a court of competent jurisdiction and not authorized to appoint a receiver under Chapter 64 of the Texas Civil Practice & Remedies Code or under Chapter 11 of the Texas Business Organizations Code because of the forum selection for arbitration;

(e)   BBL did not have standing to assert the Texas Construction Trust Fund Act as the ground supporting the judicial receivership; and

(f)   The conflict, interference, and uncertainty between the arbitration and judicial receivership weighs against authorizing imposition of same.

**A.     The Court Lacked Authority To Appoint A Receiver Because The Parties Had Selected The Arbitral Forum.**

The subject receivership is referred to as a "judicial receivership." The receivership is "judicial" because after having selected the arbitral forum and then initiating arbitration, BBL entirely bypassed the arbitration and the arbiter in seeking the appointment of a receiver by the district court. BBL did not first seek any order for a receivership from the arbitrator in the pending arbitration. Rather, with the arbitration pending, BBL filed a damage suit in district court and immediately thereafter sought a receivership directly from the trial court.

Further, on BBL's motion, Keeth was compelled to join the pending arbitration before the trial court appointed a receiver. Accordingly, at the time the

12

trial court appointed a receiver and imposed a "judicial receivership" all parties were in the pending binding arbitration. Thus, our judicial receivership is distinct and different from a receivership that may have been sought in the arbitration, imposed by an arbitrator, and *then* potentially supported or enforced by an order from the trial court pursuant to Texas Civil Practice & Remedies Code § 171.086(b)(2).[1]

### (1)    Arbitral Forum Selection Severely Limits A Trial Court's Authority.

In the contracts between them, BBL and Dream Creek selected the arbitral forum rather than the judicial forum to resolve their disputes. (CR pp. 27, 57, 108-9, 139-40) Pursuant to that choice, BBL successfully compelled Keeth, individually, a non-signatory to the agreements, to join the pending arbitration. (CR p. 185)  Thereafter, with the parties in a pending arbitration, the trial court appointed a receiver and imposed a judicial receivership. (CR pp. 255-60) Therefore, the forum selection for arbitration is the starting point for consideration of whether the trial court had the authority to appoint a receiver and impose a judicial receivership upon parties despite a pending arbitration.  Important to this analysis is a corollary question—whether, in their selection of the arbitral forum,

---

[1] In drawing this distinction Appellants do not intend to concede that the Arbitrator had the authority to impose or could have properly, under circumstances presented on this record, imposed a receivership on Dream Creek.

the parties had any agreement that a judicial receiver would be an available remedy. The answer is no. (CR pp. 27, 57, 108-9, 139-40)

Generally, a trial court's authority is extremely limited upon the parties' selection of the arbitral forum. *See Senter Invs., L.L.C. v. Amirali & Asmita Veerjee & Al-Waahid, Inc.*, 358 S.W.3d 841, 844-45 (Tex. App.—Dallas 2012). Indeed, the Supreme Court of the United States has noted that the clear intent of arbitration is to move the parties out of court and into arbitration as quickly and easily as possible. *Moses H. Cone Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 22 (1983).

Citing *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex. 2008), the Austin Court of Appeals observed that when parties have agreed to arbitrate, it is axiomatic that courts are empowered to do little more than enforce the agreement to arbitrate and stay further judicial proceedings pending an award. *Comed Medical Systems, Co., Ltd. v. AADCO Imaging, LLC*, 2015 Tex. App. LEXIS 1762 (Tex. App.—Austin 2015) (unpublished opinion). For example, a trial court lacks jurisdiction to order discovery related to the merits of claims in a pending arbitration unless it is to enforce the discovery orders of the arbitrator. *See In re Houston Pipe Line Co.*, 311 S.W.3d 449, 450 (Tex. 2009); *Transwestern Pipeline Co. v. Blackburn*, 831 S.W.2d 72, 78 (Tex. App.—Amarillo 1992, orig. proceeding).

14

Both federal law and Texas law are clear and in accord that an agreement to arbitrate is in the nature of forum selection. The Supreme Court of the United States has held that an agreement to arbitrate is, in effect, a specialized form of a forum-selection clause that establishes not only the situs but also the procedure to govern resolving the dispute. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974).

Likewise, the Supreme Court of Texas treats an agreement to arbitrate as "another type of forum-selection clause," holding that it "sees no meaningful distinction between this type of forum-selection clause [(judicial)] and arbitration clauses." *In re AIU Ins.*, 148 S.W.3d 109, 114, 121 (Tex. 2004). On whether arbitration was waived, and whether an adequate remedy by appeal exists, the Texas Supreme Court has consistently applied by analogy the law governing questions of waiver, etc. arising in the context of agreements selecting a judicial forum. *See id.* at 116; *In re Automated Techs., Inc.*, 156 S.W.3d 557, 559 (Tex. 2004) (noting that the *In re AIU Insurance* court, in considering whether the right to rely on forum-selection clause had been waived, "relied on cases concerning waiver in the arbitration context, which we found to be analogous.")

The Fifth Circuit Court of Appeals, likewise, has concluded that law allowing an arbitration clause to be invalidated because of fraud or overreaching applies by analogy to judicial forum-selection clauses because arbitration clauses

15

are a sub-set of forum-selection clauses in general. *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997).

Finally, considering the effect of selection of a judicial forum other than the forum in which suit was filed, this Dallas Court of Appeals has in two cases made it clear that trial courts have limited authority by holding it an abuse of discretion to fail to enforce forum selection clauses through dismissal for want of jurisdiction. *In re Brown*, 441 S.W.3d 405, 407 (Tex. App.—Dallas 2013, no pet.); *In re FC Stone, LLC,* 348 S.W.3d 548, 551 (Tex. App.—Dallas 2011, no pet.).

Applying these principles to our case, BBL and Dream Creek selected the arbitral forum, and by analogy it is as if they had selected Illinois or Virginia as the judicial forum *vis-à-vis* the limitation upon the jurisdiction and authority of the trial court. Thus, upon selection of the arbitral forum, a trial court ceased to be a court of general jurisdiction and lacked inherent jurisdiction, including the authority to impose a judicial receivership upon parties who are engaged in a pending arbitration. Therefore, if it exists, the authority of the trial court to appoint a receiver and impose a judicial receivership upon parties that had selected the arbitral forum must come from some specific source.

Contracts containing arbitration clauses may involve three potentially relevant sources of legal authority for a trial court that had general jurisdiction over the parties and subject matter: (1) the law governing the selection of the arbitral

16

forum, including procedures for the arbitration—AAA Construction Industry Rules ("AAA Rules") in our case; (2) the law governing the agreements to arbitrate and supporting the performance of that agreement—the FAA and TAA; and (3) the law governing the substantive contract—Texas Civil Practice & Remedies Code Chapter 64; Texas Business Organizations Code Chapter 11; and the Texas Construction Trust Fund Act (TCTFA). Review and analysis of each of these potential sources of authority for the trial court's imposition of a judicial receivership establishes that the trial court was not authorized through any of these legal systems. We begin with consideration of the law of the arbitral forum-the arbitration.

## B. Law Of The Arbitral Forum Does Not Authorize A Judicial Receivership.

### (1) Receivership Was Not An Agreed Arbitration Remedy.

Selection of the arbitral forum amounts to selection of not only the situs but the procedure to govern resolution of their dispute. *Scherk*, 417 U.S. at 519; *Smith Barney Shearson, Inc. v. Boone*, 47 F.3d 750, 753-54 (5th Cir. 1995). Thus, a potential source of authority for a trial court to impose a receivership upon parties in a pending arbitration is the same agreement through which those parties selected arbitration.

### (2) No Contractual Agreement For A Judicial Receivership Exists.

17

In our case, the arbitration provisions did not contemplate court-entered injunctive relief pending arbitration. (CR pp. 17-179); *see Amegy Bank N.A. v. Monarch Flight II, LLC*, 870 F. Supp. 2d 441, 452 (S.D. Tex. 2012) (acknowledging the possibility of a court's entering interim relief in the form of a preliminary injunction where the parties had contemplated its use beforehand). The "Agreement to Arbitrate" clauses at issue do state that controversies and claims must be arbitrated, but there is no such "Preservation of Remedies" clause that qualifies this language. The provisions are clear: if the parties had intended to allow "a court having jurisdiction" to provide interim relief before, during, or after arbitration, they would have contracted for it. *See Monarch Flight II, LLC*, 870 F. Supp. 2d at 453. There was no agreement that a judicial receivership was a potential remedy either in the arbitral forum, ancillary to the arbitration, or in parallel with the arbitration. (CR pp. 17-179). Therefore, if it exists, the trial court's authority to impose a judicial receivership must come from some other source.

### (3) The AAA Rules Do Not Provide For A Judicial Receivership.

In selecting arbitration, the parties did agree that the Construction Industry Arbitration Rules of the American Arbitration Association would apply. Therefore, the AAA Rules are a potential source of the trial court's authority.

The purpose of this specialized arbitral institution is to provide for the resolution of disputes by respected members of the same profession who have extensive personal experience in the subject matter of the dispute. *See Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 85-86. The existence of well-defined customs in the profession or trade, the expertise of the arbitrators, and the pressure on members to respect the rules of the professional or trade association, all encourage respect for the arbitral process and for arbitral awards. *See generally* American Arbitration Association Areas of Expertise, Construction, https://www.adr.org/aaa/faces/aoe/cre/construction (last visited July 23, 2015).

Review fails to reveal any provision, within the specialized construction industry AAA Rules, that authorizes, or even supports, appointment of a judicial receiver or imposition of a judicial receivership over parties arbitrating pursuant to these AAA Rules. From the above, it is clear that there is no basis for authority for the trial court's appointment of a judicial receiver over Dream Creek or Keeth found in any agreement of the parties. Nothing in the arbitration provisions in question, or otherwise in any Subcontractor Agreement in question, provides that in selecting the arbitral forum, the parties agreed that a court may appoint a receiver over any party to the arbitration. There was no agreement that a judicial receivership was a potential remedy either in the arbitral forum or ancillary to the arbitration. Nothing in the AAA Rules, to which the parties did agree, authorizes a

19

trial court to impose a judicial arbitration on the parties in arbitration. Thus, if it exists, the authority of the trial court must be found in some other source.

**C.**    **Law Supporting Arbitration Does Not Authorize Judicial Receivership.**

Having agreed to participate in an arbitral process to resolve their disputes, the parties agreed to respect the process as binding between them. Indeed, where two parties have agreed to submit their dispute to a wise outsider for resolution, how can one of them later refuse to defer to the wisdom yet to be applied? By and large, parties do accept the decisions of arbitrators who are fellow professionals in the same field of commerce.

However, where arbitration clauses either fill a vacuum—that is, take the place of no choice of forum in the contract, which would permit a claimant to bring suit in any court where it could get jurisdiction over the defendant, or replace a choice of a state court—the parties are not inspired by any of the positive sentiments which promote the voluntary respect of the arbitral process. These unfortunates are neither motivated by the wisdom of the particular arbitrators chosen nor by a corporative attitude of cooperation. Indeed, it is no longer unusual that a party may fail to cooperate in the arbitral process, or even actively obstruct it (e.g., by exploiting a trial court judge unfamiliar with the unique circumstances of construction disputes).

20

It is this lack of cooperation that leads to the necessity to consider judicial assistance to the arbitral process and, to assure respect of said process, recourse to the enforcement powers enjoyed only by the State. *See* Tex. Civ. Prac. & Rem. Code § 171.087.

It is against this backdrop, at least in part, that the United States Congress and the Texas Legislature have made provisions for those parties disinclined to respect the arbitral process. Additionally, in order to support the arbitration proceeding and achieve its goals, procedures are prescribed by the relevant sections of the FAA and the TAA. Although these statutes are potential sources of a trial court's authority, review and analysis reveals that none of these statutes authorizes imposition of a judicial receivership.

### (1) The FAA Does Not Authorize A Judicial Receivership.

Because the matters involved in the arbitration in our case patently involve interstate commerce, the FAA applies. Thus, the question raised is whether the federal act authorizes a trial court to appoint a receiver and impose a judicial receivership upon parties arbitrating under the FAA. The answer is no.

The arbitration provision in each Subcontractor Agreement in question does not specify expressly whether the agreed arbitration is governed by the FAA or the TAA. (CR pp. 27, 57, 108-9, 139-40) Absent such express agreement, the FAA will govern upon showing that the transaction involves or affects interstate

21

commerce. *In re L&L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 127 (Tex. 1999); *Jack B. Anglin, Co. v. Tipps*, 842 S.W.2d 266, 269-70 (Tex. 1992).

From the face of the contracts in question, the transactions at issue in this case involve or affect interstate commerce. *Inter alia*, BBL is a New York limited partnership with construction projects in Texas and Oklahoma. Further, Dream Creek, a Texas corporation, agreed to provide framing services on not only projects in Corpus Christi and Midland, but also on the Mosaic project, located in Oklahoma City, Oklahoma. (CR pp. 17, 19, 50, 100) Thus, without question, the FAA applies. *See In re L&L Kempwood Assocs., L.P.*, 9 S.W.3d 125 at 127 (holding the FAA is applicable in a case in which work on apartments in Texas was performed for Georgia owners by Texans); *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005) (holding FAA is applicable to medical negligence case for malpractice allegedly committed in Texas by Texans upon a Texan, because Medicare had paid some of the medical charges).

Review of the FAA, concerning whether appointment of a judicial receiver is permitted, reveals that the federal act does not contain any provision authorizing a trial court to appoint a receiver and establish a judicial receivership upon any party engaged in a pending arbitration governed by the FAA. Federal case authority supports a trial court ordering preliminary relief, including appointment of a receiver, **before** referring a case to arbitration. *See Janvey v. Alguire*, 647

22

F.3d 585, 593 (5th Cir. 2011). Research, however, has failed to reveal any United States Supreme Court or Circuit Court of Appeals authority deciding whether **after** initiation of arbitration, the FAA permits imposition of a judicial receivership upon parties in a pending arbitration, especially absent any agreement by the parties that judicial receivership is a potential remedy in the arbitral forum. *See Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 487 (5th Cir. 2002) ("The FAA does not provide therefore for any court intervention prior to issuance of an arbitral award beyond the determination as to whether an agreement to arbitrate exists and enforcement of that agreement by compelled arbitration of claims that fall within the scope of the agreement even after the court determines some default has occurred. Moreover, enforcement of an agreement to arbitrate under the FAA does not appear to include any mechanism beyond those geared toward returning the parties to arbitration . . . .").

Research has revealed one federal district court memorandum opinion which, in the context of ruling on a motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), considered but made no decision regarding the propriety of a request for appointment of a judicial receiver made by an arbitration party. *Wells Fargo Bank, N.A. v. Star Tex. Gasoline & Oil Distribs.*, 2015 U.S. Dist. LEXIS 10673 (S.D. Tex. 2015). Important to the district

court's consideration was whether a bargained-for provision, including judicial receivership as an agreed-upon remedy, was included in the agreement to arbitrate.

In *Wells Fargo Bank, N.A. v. Star Tex. Gasoline & Oil Distribs.*, Wells Fargo Bank requested appointment of a receiver "ancillary to an anticipated arbitration proceeding" arising out of an alleged breach of loan agreements. 2015 U.S. Dist. LEXIS 10673, at *3. Star Texas Oil filed a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief could be granted. The district court reviewed federal law concerning receiverships noting that the Supreme Court had determined that appointment of a receiver was not an end in itself, but a means to a legitimate end justifying a court exercising its equity powers. *Id.* at *7; *Kelleam v. Md. Cas. Co.*, 312 U.S. 377, 381 (1941).

Because of arbitration of its substantive claims, Wells Fargo agreed that its emergency application for appointment of a judicial receiver did not include any primary claim for relief. However, in opposition to dismissal, Wells Fargo relied on language from a credit agreement executed by Star Texas that expressly preserved the right of any party to, *inter alia*, obtain appointment of a receiver. Obviously, based on this language in the credit agreement and giving efficacy to the agreements of the parties, the district court denied dismissal. But, the district court expressly disclaimed any view on whether receivership is available absent a contract provision providing for or at least preserving a right to seek the same. In

so doing, the district court limited the applicability and precedential value of its decision.

A court should not appoint a receiver when such appointment is not auxiliary to some primary relief which is sought and which equity may appropriately grant. *Id.* Further, there is no occasion for a court of equity to appoint a receiver of property for which it is not asked to make any substantive disposition. *Tucker v. Baker*, 214 F2d. 627, 632 (5th Cir. 1954).

In our case, BBL and Dream Creek had no agreement that a judicial receivership would be an available remedy. Further, their contracts contained no provision preserving any right to even seek such a remedy. Nothing in the arbitration provisions in question, or otherwise in the contracts in question, provide that, in selecting the arbitral forum, the parties agreed that a court may appoint a receiver over any party to the arbitration. In other words, there was no agreement that a judicial receivership was a potential remedy either in the arbitral forum or ancillary to the arbitration. As of the time BBL renewed its request and the trial court appointed the receiver, all substantive relief was pending in the arbitration. Therefore, applying the general federal law concerning receiverships, coupled with the fact the FAA does not provide for same, there is no basis for concluding federal law supports authorizing the trial court to appoint a receiver.

The FAA does authorize a trial court to take certain actions and issue certain orders. 9 U.S.C. § 16. However, absent from such authorization is imposing a judicial receivership. Obviously, Congress could have easily included within the FAA the authorization for federal district courts to appoint receivers and impose judicial receiverships on parties in arbitrations. Congress, however, did not do so. Consistent with the limitation of judicial authority by selection of the arbitral process and absent express authorization for receiverships in the FAA, this Court should conclude that the FAA is not a source of authority for the trial court to appoint the receiver over Dream Creek. *See Gulf Guar. Life Ins. Co.*, 304 F.3d at 487. If it exists, the authority must be found in yet some other source.

**(2) The TAA Does Not Authorize Judicial Receiverships Because A Receivership Is Not Among Orders Authorized by § 171.086.**

That the FAA governs the arbitration in this case is not the end of the analysis and consideration of whether the trial court had the authority to impose a judicial receivership on Dream Creek in this case. BBL and Dream Creek did not expressly choose either the FAA or the TAA to govern the arbitration. (CR pp. 27, 57, 108-9, 139-40) Each Subcontractor Agreement had only a general choice of law provision, three for the law of Texas and one for the law of Oklahoma. (CR pp. 26, 56, 108, 138) The Supreme Court of Texas has held that in view of agreement on merely a general choice of law, both the FAA and the TAA apply.

26

*In re D. Wilson Constr. Co.,* 196 S.W.3d 774, 778-79 (Tex. 2006) (citing *In re L & L Kempwood Assocs., L.P.*, 9 S.W.3d 125 (Tex. 1999) (per curiam)). The FAA controls only over conflicting provisions of the TAA, preempting conflicting but not consonant state law. *In re D. Wilson Constr. Co., 196 S.W.3d at 779-80.* As the FAA is silent concerning judicial receiverships, the issue raised is whether the TAA authorizes a trial court to impose a judicial receivership upon parties in arbitration. The answer is no.

Because a trial court would otherwise have virtually no jurisdiction over a case in the arbitral forum, one of the purposes of the TAA, codified as Texas Civil Practice & Remedies Code § 171.001 et seq., is to confer on the court limited jurisdiction to act despite the agreement for arbitration. Specifically, Subchapter D of Chapter 171 of the Remedies Code provides a trial court such authority and, thus, is a potential source of authority to impose a judicial receivership.

Analysis begins with § 171.081 entitled "Jurisdiction." Tex. Civ. Prac. & Rem. Code § 171.081. Consistent with a court having only limited authority, this section of the Remedies Code provides that an agreement to arbitrate confers jurisdiction on the court to enforce the agreement to arbitrate and to render judgment on an award. It is important to note that the TAA does not confer general jurisdiction on the court as part of the selection of the arbitral forum. In § 171.086, the TAA does confer on a trial court limited authority to take only certain

27

actions and issue certain orders purposed to facilitate the initiation of arbitration, in support of the arbitration, and to enforce the arbitration award, so long as it is not contrary to federal law and the FAA.

Texas Civil Practice & Remedies Code § 171.086 appears at first blush to be the most viable potential source of a trial court's jurisdiction and authority to impose a judicial receivership because this section authorizes a trial court to take certain actions and issue selected orders in connection with a pending arbitration. The specific orders that a trial court is authorized to make before arbitration proceedings begin are set forth in § 171.086(a). Expressly permitted orders a trial court is authorized to make while arbitration proceedings are pending are provided in § 171.086(b). These include any of the orders listed in § 171.086(a). Tex. Civ. Prac. & Rem. Code §171.086(b)(1). Thus, the orders a trial court has authority to issue, while an arbitration is pending, as expressly stated, include: (1) orders for service of process, § 171.086(a)(1); (2) exercising jurisdiction over an ancillary proceeding *in rem*, including attachment, garnishment or sequestration, § 171.086(a)(2); (3) enjoining or restraining for certain limited purposes, § 171.086(a)(3); (4) pre-arbitration discovery, § 171.086(a)(4); and (5) appointing arbitrators so that the agreed arbitration may proceed, § 171.086(a)(5). Appointing a receiver is not listed among orders expressly set forth in § 171.086(a).

There are additional orders for which § 171.086(b) expressly provides. However, review of § 171.086(a), together with § 171.086(b), readily reveals that the appointment of a receiver and imposition of a judicial receivership to be conducted along a parallel track with a pending arbitration is not listed in either subsection. *See In re Gulf Exploration, LLC,* 289 S.W.3d 836, 841 (Tex. 2009). There is no express authorization for the trial court to order a receiver and impose a judicial receivership anywhere in Subchapter D of Chapter 171 of the Remedies Code.

One subsection, § 171.086(a)(6), however, grants authorization for unspecified orders for "other relief" raising the question of whether authorization for a trial court's imposition of the receivership may be found in this subsection. Reading the applicable subsections of § 171.086 together, a party may, during a pending arbitration, file an application for a court order "to obtain other relief, which the court can grant in its discretion, needed to permit the arbitration to be conducted in an orderly manner and to prevent improper interference or delay of the arbitration." Tex. Civ. Prac. & Rem. Code § 171.086(a)(6) (West 2014).

Two specific questions are thus raised by § 171.086(a)(6). First, is whether a judicial receivership is *ever* within the scope of § 171.086(a)(6) so that judicial receivership is an authorized remedy paralleling an arbitration. Appellants urge that the answer is no. However, if this Court answers this question "yes," then the

29

second question is whether the trial court properly exercised its discretion under the pleading and proof in our case to impose a judicial receivership. The answers to both questions are no.

Just as the U.S. Congress did not expressly include a judicial receivership in the FAA as a remedy available to trial courts, the Texas Legislature did not expressly include appointment of a receiver in § 171.086 of the Remedies Code. Having listed various grants of authority, including a number of specific orders, judicial receivership was not included on the list. Certainly had the Legislature intended that the harshest of remedies of which courts are admonished to use very sparingly and only as a last resort was a remedy for which an arbitration party could apply, receivership would have been listed in § 171.086. This is especially the case because ancillary relief *in rem* and injunctive relief were, within set limits, already specifically authorized by § 171.086(a)(2) and (3). Accordingly, under the doctrine of *expressio unius est exclusio alterius*—the naming of one thing excludes another—this Court should hold that appointment of a receiver is not authorized, especially not by a mere amorphous reference to "other relief" in § 171.086(a)(6).

Although research has failed to reveal any case squarely addressing this first question, there are cases overturning other actions taken by trial courts because the court lacked authority due to pending arbitrations. Texas courts generally apply Texas procedural law even while applying the parties' contractual choice of law

for substantive matters. *Nexen, Inc. v. Gulf Interstate Eng'g Co*., 224 S.W.3d 412, 417 (Tex. App.--Houston [1st Dist.] 2006, no pet.) (holding that because the arbitration clauses did not authorize the trial court to appoint arbiters, mandamus was conditionally issued to vacate the trial court's appointment). In another case in arbitration, the Texas Supreme Court held that § 171.086 provided only limited authority for a trial court to order only certain discovery. *In re Houston Pipe Line Co.,* 311 S.W.3d 449, 451 (Tex. 2009). Pre-arbitration discovery is expressly authorized under the TAA when a trial court cannot fairly and properly make its decision on the motion to compel arbitration because it lacks sufficient information regarding the scope of an arbitration provision or other issues of arbitrability. *See* and 171.086(a)(4), (6). This, however, is not an authorization to order discovery as to the merits of the underlying controversy. *Id.*

Because of the jurisdictional limitations resulting from arbitration, a trial court does not have the authority to impose its choice of arbitrators and its orders for merits-based discovery upon parties in arbitration. This Court should follow these principles and hold that the 68th District Court did not have the authority to impose a judicial receivership upon Dream Creek and Keeth.

The second question is whether, assuming it had authority, the trial court properly exercised its discretion under the pleading and proof in our case to impose

a judicial receivership. Arguments and authorities concerning this question are presented in analysis of Issue Two (b), *infra,* at page 52.

### D. Neither Remedies Code Chapter 64 Nor Business Organizations Code Chapter 11 Authorize A Judicial Receivership.

In its pleadings, motion, and supporting trial brief, BBL requested the appointment of a receiver pursuant to Texas Civil Practice & Remedies Code § 64.001 *et seq.* and §§ 11.402 and 11.403 of the Texas Business Organizations Code. (CR pp. 493-500, 501-611, 805-815)  However, BBL's submittals are all void of any pleading, consideration, or authority on the effect of the parties' choice of the arbitral forum, their lack of agreement that receivership is a potential remedy, and that the trial court was being asked to establish a judicial receivership in parallel to the pending arbitration.  *Id.*

#### (1) The Trial Court Is Not A Court Of Competent Jurisdiction Under Texas Civil Practice & Remedies Code § 64.001(a).

Review of the Order Appointing Receiver signed by the trial court conclusively establishes that the trial court looked, at least in part, to Texas Civil Practice & Remedies Code §§ 64.001(a)(3), (5), and (6) for authority, or at least justification, for its appointment. (CR pp. 255)  However, while making the remedy of receivership available, none of these code provisions within themselves vest a trial court with any original jurisdiction necessary to impose the remedy of receivership, especially in view of the selection of the arbitral forum by the parties.

32

To begin with, § 64.001(a) states "[A] court of *competent jurisdiction* may appoint a receiver." Tex. Civ. Prac. & Rem. Code § 64.001(a) (emphasis added). From the above analysis, because the parties selected the arbitral forum a trial court lacks inherent authority to appoint a judicial receiver. Applying the judicial forum selection analogy, had BBL and Dream Creek selected Louisiana as the forum, and BBL made its emergency motion in a trial court in Dallas County, Texas to appoint a receiver based on § 64.001(a), the trial court would obviously not be a "court of competent jurisdiction" to entertain BBL's application. Because Texas was not the selected forum, § 64.001(a) would not authorize the trial court to appoint a receiver. The same is true in our case because the parties chose the arbitral forum not the judicial forum in Texas.

Beyond the express application in § 64.001(a) to a court of "competent jurisdiction," nothing thereafter in Chapter 64 of the Remedies Code provides a court any "competent jurisdiction." Especially in the face of selection of the arbitral forum, the "competent jurisdiction" required by § 64.001(a) must come from some source other than Chapter 64 of the Remedies Code. Apparently, BBL and the trial court merely presumed, without any consideration or analysis, that the trial court was a court of "competent jurisdiction" despite the fact BBL selected arbitration and compelled Dream Creek and Keeth to arbitrate. Nothing in Chapter 64 of the Remedies Code, however, supplies the trial court competent jurisdiction.

33

In the unlikely event this Court determines that Chapter 64 of the Code somehow vests or provides a court any "competent jurisdiction," the analysis above reveals that federal law and the FAA preempts this application of Chapter 64 of the Code. Because nothing in Chapter 64 of the Texas Civil Practice & Remedies Code requires an agreement of the parties in the arbitral forum that a judicial receivership is a viable remedy in the arbitration, there is a conflict with federal law. Therefore, any such application of Chapter 64 to vest the trial court with "competent jurisdiction" is preempted. Thus, the trial court's authority to appoint a judicial receiver must come from yet some other source.

**(2) The Trial Court Lacked Jurisdiction Under Texas Business Organizations Code § 11.404.**

BBL sought the receivership under and the trial court found that the receivership was justified and proper pursuant to Texas Business Organizations Code §§ 11.404(a)(1)(A), (C) and (D). (CR p. 255) However, the analysis must begin with § 11.401 of the Texas Business Organizations Code which governs appointments of receivers in general under this Subchapter I. § 11.401 provides that a receiver may be appointed over a domestic business organization *only* according to the terms and conditions of the Texas Business Organizations Code. Therefore, by the plain reading of § 11.404(a) of the Texas Business Organizations Code, a receivership is not "other relief" under § 171.086(a)(6) of the Remedies Code. Rather, the Texas Business Organizations Code exclusively governs the

34

appointment of a receiver for the business and/or property of Dream Creek, a domestic corporation. Although research has failed to reveal any case in which a trial court has attempted to appoint a receiver over a domestic business organization that was in a pending arbitration, Dream Creek and Keeth contend that the plain reading of the black letter of the Texas Business Organizations Code establishes the exclusive terms and conditions and that these are not incorporated into § 171.086(a)(6) of the Remedies Code. Regardless, review of terms and conditions required by the Texas Business Organizations Code reveals that applicable requirements include jurisdictional elements.

Not unlike the "court of competent jurisdiction" requirement of § 64.001(a) of the Remedies Code, in order to appoint a receiver over a domestic corporation, § 11.402(a) of the Texas Business Organizations Code requires a court must have subject matter jurisdiction over the specific property of a domestic corporation or foreign entity in this state and that entity must be in litigation. Tex. Bus. Orgs. Code § 11.402(a) (West 2014). This section of the Texas Business Organizations Code requires that a court have jurisdiction over the property and business according to § 11.402(a) of the Code. The conjunction "and," joining jurisdiction and litigation, means that the requirement for litigation is also jurisdictional. BBL and Dream Creek selected the arbitral forum and they are in arbitration and not litigation. Thus, § 11.402(a) does not provide the trial court the authority to

35

impose a judicial receivership based on this section of the Texas Business Organizations Code. Because § 11.402(a) is foundational to § 11.404, a trial court that does not meet the jurisdictional requirements of § 11.402(a) is without authority to impose a receivership under any subsection of § 11.404. It is axiomatic that a trial court acting without authority to do so abuses its discretion. *Hines v. Villalba*, 231 S.W.3d 550, 552 (Tex. App.—Dallas 2007) ("Lack of subject matter jurisdiction is fundamental error.")

The trial court erred and abused its discretion in determining that the Order Appointing Receiver was proper under § 11.404 of the Texas Business Organizations Code because the 68th District Court was not a court of proper jurisdiction for the reason that it is in Dallas County, not Parker County. Pursuant to § 11.402(b) of the Texas Business Organizations Code , "[a] district court in the county in which the registered office or principal place of business of a domestic entity is located has jurisdiction to: (1) appoint a receiver for the property and business of a domestic entity for the purpose of rehabilitating the entity as provided by Section 11.404." Tex. Bus. Orgs. Code § 11.402(b) (emphasis added) With the order transferring original venue in Dallas County to Parker County, based upon the facts that Dream Creek's principal place of business is there and Keeth is a resident of Parker County, the venue facts have already been adjudicated in this case. (CR pp.11, 868) Venue adjudication establishing that Dream Creek and

36

Keeth are residents of Parker County were established well before the 68th District Court of Dallas County issued the Order Appointing Receiver and imposed the judicial receivership.

From the plain reading of § 11.402(b) of the Texas Business Organizations Code, a district court in Parker County, and not the 68th District Court in Dallas County, was established as the court with jurisdiction under § 11.402(b) to appoint a receiver pursuant to § 11.404. Therefore, in addition to lack of jurisdiction because of the parties' selection of the arbitral forum, the 68th District Court lacked jurisdiction to appoint a receiver under § 11.404. Accordingly, the trial court erred and abused its discretion in finding that its Order Appointing Receiver was justified and proper under §§ 11.404(a)(1) (A), (C), and (D) because the 68th District Court did not have jurisdiction to make the appointment under those sections. For this additional reason, the Order Appointing Receiver cannot stand and this Court should hold that the jurisdictional requirements of Chapter 11 of the Texas Business Organizations Code are exclusive and prevail over Subchapter D of Chapter 171 of the Remedies Code.

In the event this Court determines that somehow the trial court had the authority to appoint a receiver pursuant to § 11.402 or § 11.404 of the Texas Business Organizations Code, Dream Creek and Keeth present their arguments and authorities supporting their contention that that trial court abused its discretion

because there was no pleading or evidence supporting the Order Appointing a Receiver in Issue Two (a), *infra* at page 47.

**E.     BBL Does Not Have Standing To Bring A Trust Fund Act Claim**.

> **(1)     A Texas Construction Trust Fund Act Claim May Only Be Asserted By Downstream Subcontractors, Not Upstream Payors.**

The gravamen of virtually all of BBL's efforts in this case, including without limitation, to have a receiver appointed, is its allegation that Dream Creek violated the Texas Construction Trust Fund Act to BBL's detriment.  Tex. Prop. Code § 162.001 *et seq.* (West 2013).  The Trust Fund Act provides an additional cause of action for recovery by a materialmen or subcontractor against an upstream contractor who received money, typically from the project owner, but failed to use those funds to pay subcontractors or materialmen.  Under the Trust Fund Act, a "trustee" "is liable for misapplication of trust funds if he intentionally or knowingly or with intent to defraud, directly or indirectly, retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds." *Holladay v. CW & A, Inc.*, 60 S.W.3d 243, 245-46 (Tex. App.—Corpus Christi 2011, pet. denied).

A party who misapplies trust funds under the Trust Fund Act may be subject to civil liability if (1) he breaches his duty owed under the Trust Fund Act to the

38

beneficiaries of the trust funds, and (2) the plaintiff is within the class of people that the act was designed to protect and have asserted the type of injury the act was intended to prohibit. *Lively v. Carpet Servs., Inc.*, 904 S.W.2d 868, 873 (Tex. App.—Houston [1st Dist.] 1995, writ denied). Thus, the issue raised is whether BBL is within the class of those the Trust Fund Act is designed to protect and thus has standing to bring the action.

BBL claims payments it had made to Dream Creek are "trust funds;" that Dream Creek did not properly use these funds to pay laborers, subcontractors, materialmen and suppliers; and that Dream Creek diverted the funds. (CR pp. 633-34) It is undisputed that the relationship between BBL and Dream Creek is contractor and subcontractor. (CR pp. 17-179) On this basis, BBL plead for the appointment of a receiver by the trial court. (CR pp. 638-39) The case law is settled that an owner or an upstream contractor, such as BBL, is not a beneficiary under the Trust Fund Act; BBL is not among the class of those the trust fund is purposed to protect; and, therefore, BBL does not have standing to assert a cause of action under the Trust Fund Act. A subcontractor does not hold funds paid to it by a general contractor in trust for the benefit of the general contractor or the owner. To the contrary, BBL held whatever funds it received from the owner in trust for the benefit of Dream Creek, not the other way around. *See Farrel Constr., Inc. v. Schreiber*, 466 B.R. 903, 912 (S.D. Tex. Bankr. 2012) (holding that

a general contractor who is a statutory trustee to its subcontractor under the Trust Fund Act cannot also be a beneficiary that can sue the subcontractor for misapplication of those funds).

Every construction trust fund case Dream Creek has been able to identify has held that an upstream contractor does not have standing to sue a downstream subcontractor for a violation of the Trust Fund Act. For example, the case of *Robax Corp. v. Prof'l Parks, Inc.,* 2008 U.S. Dist. LEXIS 60626, 2008 WL 3244150 (N.D. Tex. 2008) is very persuasive.

In *Robax*, Texas Waterworks was retained to design and build an aquatic facility for the City of Frisco, Texas. Texas Waterworks then subcontracted with Professional Parks, Inc. to manufacture, deliver, and install the waterslides for the project. Professional Parks, in turn, contracted with Polin to manufacture one of the waterslides. *Robax Corp. v. Prof'l Parks, Inc.,* 2008 U.S. Dist. LEXIS 60626, *3, 2008 WL 3244150 (N.D. Tex. 2008).

The evidence showed that Texas Waterworks paid to Professional Parks funds that were intended to cover the cost for Polin's manufacture of the slide. The evidence also showed that Professional Parks had wrongfully failed to pay those funds over to Polin. This resulted in delays on the project and Texas Waterworks having to replace Professional Parks at a significant increased cost. *Id.* at *4-5. Texas Waterworks then sued Professional Parks for violations of the

Texas Construction Trust Fund Act. The court, however, dismissed Texas Waterworks' claim for lack of standing. As the court stated:

> Although Texas Waterworks has met many of the elements of a Trust Act claim against defendants, it has not demonstrated that it is among the class of persons whom the Trust Act was intended to protect. The funds Texas Waterworks paid Professional were trust funds, but Texas Waterworks was not a beneficiary of these funds. If anyone was a beneficiary, it was Polin, or anyone else furnishing material or labor in manufacturing the waterslides that Professional was required to deliver to Texas Waterworks.
>
> Texas Waterworks was not required to perform, and in fact did not perform, any services to assist Professional in fabricating the waterslides for the Project. The Trust Act was meant to protect those contractors or subcontractors who have completed labor or have provided materials and who are entitled to payments of trust funds and thus are beneficiaries of these funds. **Texas Waterworks is not among the class of persons.**
>
> Texas Water works has presented no authority to suggest that non-beneficiaries of misappropriated trust funds can bring a claim under the Trust Act. **The court is not aware of any case in which a party in Texas Waterworks' situation—a contractor who has paid the trust funds at issue to a *downstream subcontractor*—has successfully asserted a Trust Act claim against a downstream subcontractor for misappropriation of those funds. Texas Waterworks in complaining of Professional's non-performance, not its non-payment.** Thus Texas Waterworks cannot bring this claim against Professional under the Trust Act. *Id*. at *11-13 (emphasis added).

The *Robax* court then went on to reject Texas Waterworks' argument that it could assert a claim under the Trust Fund Act as a third-party beneficiary or under the doctrine of equitable subrogation. *Id*. at *17 ("the doctrine of equitable subrogation would not allow Texas Waterworks to stand in Polin's shoes to assert this claim . . . And even if Texas Waterworks' theory had force, the doctrine of

equitable subrogation applies only if the payments satisfying Professional's debt to Polin were made involuntarily.").

In a more recent case, a court affirmed *Robax's* holding that a general contractor cannot assert a Texas Construction Trust Fund Act claim against one of its subcontractors. *Farrell Constr., Inc. v. Schreiber*, 466 B.R. 903 (S.D. Tex. Bankr. 2012). In *Farrell*, the general contractor, T.D. Farrell, attempted to get around its standing problem by relying on an express cause of action assignment to it from a downstream supplier. The court rejected this argument out of hand, stating:

> T.D. Farrell has submitted no authority for the proposition that a general contractor who has acted as trustee for trust funds can by means of assignment, subrogation, or indemnity assert a statutory claim in place of the actual statutory beneficiary under the Texas Construction Trust Fund Act . . . **Where a Texas statute requires a plaintiff to have particular characteristics to obtain the benefit of a protected status, an assignment of the protected status is ineffective**. *Id*. at 913 (emphasis added) (internal citations omitted).

The *Farrell* court also found meritless the argument that language in T.D. Farrell's contract with the defendant was sufficient to impose trust-like duties on a subcontractor in favor of T.D. Farrell. The court held that just because one calls funds received from an owner "trust funds" in a construction contract does not satisfy the legal requirements for creating an express trust, and this does not get around the fundamental problem that a general contractor who is a trustee cannot also be the intended beneficiary of such a trust. *Id*. at 916.

The foregoing analysis of the Trust Fund Act, and the cases interpreting it, show that BBL never had and never will have standing to assert a claim for violation of the Texas Construction Trust Fund Act against Dream Creek. In its trial brief, BBL apparently merely assumed it could bring a trust fund action and failed to cite any authority supporting its standing to do so. (CR pp. 805-815) Further, there is no evidence in this Record on Appeal by which BBL established it has standing to bring the trust fund action.

### (2) Lack Of Standing Results In Trial Court Lacking Authority To Appoint A Receiver.

Standing is not only a prerequisite to filing suit and maintaining a cause of action, but also concerns jurisdiction. If a party does not have standing to bring an action, the trial court does not have jurisdiction over the action. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012). Standing is a component of subject matter jurisdiction and, as such, can be raised by an appealing party for the first time on appeal or even by the court at any time. *West Orange-Cove Consol. ISD v. Alanis*, 107 S.W.3d 558, 583 (Tex. 2003); *Finance Comm'n v. Norwood*, 418 S.W.3d 566, 580 (Tex. 2013). BBL's lack of standing is another reason the trial court was not a court of "competent jurisdiction" required under the analysis of Chapter 64 of the Remedies Code, generally governing receiverships in the judicial forum.

43

**F.** **Probable Conflict, Interference, And Uncertainty Between Arbitration And Judicial Receivership Weighs Against Authorizing Imposition.**

The Order Appointing Receiver in this case serves as a good example of the consequences of a parallel judicial track in which the parties' selection of the arbitral forum has been, at very most, an afterthought. Unbridled from the limitation on judicial authority resulting from the pending arbitration, the judicial receivership imposed by the trial court goes way beyond the bounds of the claimed purpose of preservation of funds received by Dream Creek and its assets to be available should BBL prevail on the merits of its claims in the pending arbitration.

The charge given the receiver by the trial court in our case includes: (1) managing the day-to-day affairs of Dream Creek; (2) control over the management and operation of Dream Creek; (3) control of all property; (4) authority to hire and fire employees; (5) authority to sell and lease property; (5) authority to establish bank accounts, make payments and receive payments from Dream Creek's debtors. (CR pp. 256-58) There is nothing in the order through which the receiver has any instruction, much less duty, to coordinate any activity with the Arbitrator or take the pending arbitration into account in any way. It is obvious that the potential exists for the judicial receivership, running in parallel with the arbitration and unmoored from the limitation of authority resulting from selection of the arbitral

44

forum for resolution of the disputes out of which the perceived need for a receivership arose, to result in interference, conflict, and uncertainty.

It is simply bad policy to permit such an intrusion of judicial activities upon a pending arbitration through a determination that, through inference of "other relief" or another amorphous reference, a judicial receivership is a remedy authorized by the FAA or the TAA. This Court should hold in this case, and in absence of an agreement of the parties in arbitration, that a receivership is not an available remedy, and the trial court lacked the authority to impose a judicial receivership upon Dream Creek and Keeth. A holding that the trial court has full authority, despite the selection of the arbitral forum, to simply run a parallel case, even under the guise of "supporting the purposes of the arbitration," not only frustrates the arbitral process but diminishes the choice of forum the parties made in their contract. Holding that a trial court may impose a judicial receivership upon a party in arbitration, despite selection of the arbitral forum, nullifies the efficacy of the choice of that forum. The Order Appointing Receiver cannot stand.

45

## II.   The Trial Court Abused Its Discretion In Appointing A Receiver.

Issue No. 2 (Restated):  Did the trial court abuse discretion in appointing a receiver when:

(a)   BBL failed to (i) establish that Dream Creek was in litigation and that the action in litigation was an action by an owner or a member of the domestic entity as required by § 11.404(a)(1) of the Texas Business Organizations Code, and (ii) prove it was a creditor of Keeth or had any justiciable interest in his personal bank account;

(b)   BBL failed to plead or prove a receivership was needed to permit the pending arbitration: (1) to be conducted in an orderly manner; and (2) to prevent improper interference or improper delay of the arbitration;

(c)   Texas Civil Practice & Remedies Code § 64.071 requires that an action to have a receiver appointed for a corporation with property in this state be brought in Parker County, the county of the principal office of Dream Creek;

(d)   There is no evidence or insufficient evidence to support the receivership under Texas Civil Practice & Remedies Code § 64.001(a)(3);

(e)   There is no evidence or insufficient evidence to support the receivership under Texas Civil Practice & Remedies Code § 64.001(a)(5); and

(f)   Rules of equity do not permit appointing a receiver if statutory requirements for such appointment are not fulfilled.

**A.** **BBL failed to (i) establish that Dream Creek was in litigation and that the action in litigation was an action by an owner or a member of the domestic entity as required by § 11.404(a)(1) of the Texas Business Organizations Code, and (ii) prove it was a creditor of Keeth or had any justiciable interest in his personal bank account.**

**(1)** **BBL's Damages Suit Is Not An Action By A Domestic Entity Owner Required By § 11.404(a)(1) Of The Texas Business Organizations Code.**

Chapter 11 of the Texas Business Organizations Code governs the winding up and termination of domestic business organizations. BBL neither pleaded nor proved that Dream Creek was winding up its business affairs or was in the process of termination. There is no evidence in the Record on Appeal of any winding up or termination. Therefore, as a matter of law Chapter 11 is inapplicable and does not support the receivership.

If held to apply, Subchapter I of Chapter 11 has additional specific requirements beyond threshold jurisdictional requirements analyzed in Issue One (d), *supra,* pages 32-38. In addition to the fact that the trial court in Dallas County did not have jurisdiction to appoint a receiver under § 11.402(a) or (b) in the first instance, § 11.404 (a)(1) has a specific limitation that, as a matter of law, BBL did not and can never satisfy.

Texas Business Organizations Code § 11.404 (a)(1) provides:

"Subject to Subsection (b), a court that has jurisdiction over the property and business of a domestic entity under Section 11.402(b) may appoint a receiver for the entity's property and business if: (1) *in*

47

***an action by an owner or member of the domestic entity***, it is established that: (A) the entity is insolvent or in imminent danger of insolvency; . . . (C) the actions of the governing persons of the entity are illegal, oppressive, or fraudulent; (D) the property of the entity is being misapplied or wasted . . . ." Tex. Bus. Orgs. Code § 11.404 (a)(1) (West 2014) (emphasis added).

The trial court's Order Appointing Receiver states that the appointment was proper under Texas Business Organizations Code § 11.404(a)(1)(A), (C), and (D). (CR p. 255)    However, any and all appointments of a receiver under subsection (a)(1) of § 11.404 must, by the plain reading of the Code, comply with the requirement that the necessary elements be established in an action <u>brought by an owner or member</u> of the domestic entity. Clearly, BBL's damage suit against Dream Creek is not "an action by an owner or member of the domestic entity." As it did with respect to attempting to assert construction trust fund act claims without standing, BBL improperly attempts to take on the mantle of an owner or member of the entity to justify the judicial receivership.

Therefore, even if BBL submitted evidence that Dream Creek was insolvent, or in imminent danger thereof, and Dream Creek was truly in dire financial condition, pursuant to § 11.404(a)(1)(A), such showing is unavailing because this is BBL's damage suit and not an action brought by an owner or member of Dream Creek. Similarly, even if BBL brought evidence of some illegal action on the part of a governing person and/or misapplication or wasting of property, BBL's case is a damage suit filed in the face of arbitration that will not

48

support a receivership on these grounds because of the lack of any legal action by an owner or member of a domestic entity. Accordingly, the Order Appointing Receiver cannot be sustained on the basis of § 11.404(a) (1) (A), (C), and (D). The trial court clearly abused its discretion in appointing the receiver on these grounds.

### (2) BBL Is A Claimant, Not A Creditor, Of Dream Creek Or Keeth.

Although the trial court's order did not state that its appointment was justified and proper under any section of the Texas Business Organizations Code other than § 11.404(a), in its amended petition, BBL asserted entitlement to have a receiver appointed pursuant to § 11.403 of the Texas Business Organizations Code. (CR p. 638-39) The following analysis of § 11.403 of the Texas Business Organizations Code demonstrates that the Order Appointing Receiver cannot be sustained under this section, either. To the extent the trial court appointed the receiver based on § 11.403, it erred and abused its discretion. For purposes of the following analysis, it is assumed that this Court has rejected Appellants' position that the trial court did not have the requisite jurisdictional authority to appoint a receiver, including our assertion that the trial court did not have jurisdiction required by § 11.403(a) of the Texas Business Organizations Code.

The receivership in question cannot properly be based on § 11.403 of the Texas Business Organizations Code because: (1) compliance with all other requirements of law mandated by § 11.403(b)(3) cannot be satisfied; (2) BBL is a

49

claimant of Dream Creek, has failed to prove it is a creditor, and thereby cannot satisfy the creditor requirement in § 11.403(a)(2); (3) the Order Appointing Receiver imposed a judicial receivership over the entire business of Dream Creek, well beyond concerning specific property as authorized by § 11.403; and (4) a judicial receivership imposed pursuant to § 11.403 includes the trial court determining the rights of the parties to the subject property or fund by § 11.403(c), which is squarely at odds with the arbitration.

In addition to competent jurisdiction, § 11.403(b)(3) and § 11.403(a)(2) require that BBL demonstrate standing, including that it is a creditor of Dream Creek. Because, as a matter of law, BBL is not a creditor and has no standing to prosecute the claims of others who actually have creditor status, the Order Appointing Receiver cannot be sustained under § 11.403 of the Texas Business Organizations Code. BBL's pleading and proof supporting its motion makes it clear that, although BBL seeks to become a judgment creditor of Dream Creek, BBL is not a creditor. From the analysis of the Construction Trust Fund Act in Section I.E., *supra*, pages 38-43, BBL has no standing under the Act to assert trust fund violations, if any. BBL failed to prove that it has any account, debt, or other transaction with Dream Creek wherein BBL has status as a creditor. All BBL has demonstrated is that it has a chose in action, a claim, against Dream Creek for assertion of breach of contract and fraud. BBL is a claimant and not a creditor.

Texas Business Organizations Code § 11.001(1) defines the term "claim" applicable to Chapter 11 of the Code. A "claim" means a right to payment, damages, or property, whether liquidated or unliquidated, accrued or contingent, matured or unmatured. Tex. Bus. Orgs. Code § 11.001(1) (West 2014). From the plain reading of this definition, BBL has, for purposes of a receivership under Chapter 11 of the Texas Business Organizations Code, a claim and is a claimant. Appointment of a receiver pursuant to § 11.403(a)(2) requires creditor status and not claimant status.

Beyond the arguments and authorities presented on lack of construction trust fund standing, including without limitation, that BBL cannot rely on an equitable subrogation argument to attain standing, BBL failed to prove it is a creditor of Dream Creek. There is no evidence in the Record on Appeal of any assignment of any claim by any true creditor of Dream Creek in favor of BBL. That Matheus Lumber swore out lien affidavits for debts which Dream creek owes Matheus Lumber is but another potential chose in action and does not make BBL a creditor of Dream Creek within the ambit of § 11.403(a)(2) of the Texas Business Organizations Code. (CR pp. 519-22, 534-39)

The same analysis applies to BBL's failure to plead or prove creditor status as to Keeth, individually. BBL attempts, *inter alia,* to impose liability upon Keeth, individually, for Dream Creek's alleged breaches. Again, as with Dream Creek,

51

BBL is a claimant and not a creditor of Keeth, individually. There is no evidence in the record that would give BBL the status of a creditor as to Keeth, individually, nor give BBL an interest in Keeth's personal account of the sort required to support placing it in the hands of a receiver.

## B. The Judicial Receivership Was Not Imposed To Prevent Arbitration Disorder, Interference, Or Delay.

BBL failed to plead or prove a receivership was needed to permit the pending arbitration: (1) to be conducted in an orderly manner; and (2) to prevent improper interference or improper delay of the arbitration. Tex. Civ. Prac. & Rem. Code § 171.086(a)(6). In addition to Chapter 64 of the Remedies Code and Chapter 11 of Business Organizations Code, the trial court found that its appointment of a receiver was justified and proper under § 171.086 of the Remedies Code. (CR p. 255) Analysis concerning whether the trial court had authority under § 171.086 to make the appointment made it clear that an order for a receiver is not listed among the orders authorized by this section. However, a potential source of authority of appointment of a receiver may be § 171.086(a)(6), authorizing "other relief." The plain reading of § 171.086(a)(6), however, readily reveals that authorization of "other relief" is limited to certain specific circumstances.

In the event this Court concludes that § 171.086(a)(6) may authorize a trial court to appoint a receiver and impose a judicial receivership on parties in

arbitration, the plain reading of § 171.086(a)(6) significantly limits the circumstances under which this section would support a receivership. This section requires that BBL establish that a receivership, as "other relief," was needed to permit the pending arbitration to be conducted in an orderly manner **and** prevent improper interference or improper delay. The test is conjunctive.

Note that from the plain reading of § 171.086(a)(6) the conjunction "and" is used. Thus, in addition to preventing disorder in the arbitration, one must also show either that improper interference or improper delay must be prevented by a receiver. Accordingly, the burden on the party applying for a receivership authorized by this section, BBL in this case, is to plead and prove that one of the two combination of circumstances exists in order for this section to authorize a receiver, if it does so at all.

BBL has neither pleaded nor proven any basis upon which § 171.086(a)(6) would authorize or support the Order Appointing Receiver. Without such pleading and proof, the trial court erred and abused its discretion in appointing the receiver and in concluding that the appointment was justified and proper under § 171.086(a)(6). BBL's original petition and its amended petition are void of any pleading of § 171.086(a)(6) or of any facts that express or infer that there has been disorder in the arbitration, improper interference or undue delay in the arbitration which a receiver needs to address. Likewise, BBL's so-called emergency motion

53

and its supplement are void of any assertion of § 171.086(a)(6). (CR pp. 493-500, 501-611)

The proof BBL submitted with its motion and supplement is void of any proof there has been disorder in the arbitration, improper interference or undue delay in the arbitration which a receiver needs to address. *Id.* Further, proof BBL submitted with its motion and supplement is void of any proof as to how and why a receiver would prevent either (i) disorder and interference, or (ii) disorder and improper delay. *Id.* The only shred of evidence that even remotely relates to any circumstance germane to § 171.086(a)(6) is the letter from BBL's counsel to AAA advising of the filing of the lawsuit and requesting that the AAA hold the arbitration in abeyance. (CR p. 182-83) Thus, the only evidence in the record regarding arbitration "delay" establishes that BBL sought a delay as part and parcel of its request for a receivership. *Id.* BBL proved nothing about the required element, that the order sought was purposed to prevent improper delay. BBL has it backwards in this case. Here, BBL sought delay in the arbitration to appoint a receiver, rather than appointing a receiver to prevent delay of the arbitration.

In determining that § 171.086(a)(6) justified its appointment of a receiver and that the Order Appointing Receiver was proper thereunder, the trial court wholly failed to follow guiding principles, including without limitation, the plain reading of this section. The trial court acted without any evidence to establish the

54

legal requirements and further when the only evidence germane to the issue established the exact opposite of the circumstance required. Thus, the trial court erred and abused its discretion. The Order Appointing Receiver cannot stand.

**C.  Dallas County Is An Improper Venue To Order A Receivership Over Dream Creek.**

Subchapter E of the Chapter 64 of the Texas Civil Practice & Remedies Code governs appointment of receivers over corporations. An action to have a receiver appointed over a corporation with property in this state is required to be brought in the county in which the principal office of the corporation is located. Tex. Civ. Prac. & Rem. Code § 64.071. The principal place of business of Dream Creek is in Parker County. The 68th District Court of Dallas County obviously erred and abused its discretion in imposing the judicial receivership upon Dream Creek, even if it otherwise had jurisdiction.

Although the discussion focused on Chapter 11 of the Texas Business Organizations Code, prior counsel for Dream Creek raised the impropriety of venue with the trial court arguing against appointment of a receiver. (RR Vol. 2 pp. 27-29)

**D.  BBL Has No Joint Ownership Or Interest In The Property Or Fund.**

The trial court found that the Order Appointing Receiver was just and proper under Texas Civil Practice & Remedies Code § 64.001(a)(3). (CR p. 255) This

55

subsection provides that a court of competent jurisdiction, which the trial court was not, may appoint a receiver in an action between partners or others jointly owning or interested in any property or fund. BBL has failed to prove that it is "jointly owning or interested in any property or fund." Reviewing courts have construed the "joint ownership or interest" to require a demonstration of unity of interest or liability. For the same reasons that BBL has no standing under the construction trust fund act to bring an action for alleged breach against Dream Creek, BBL lacks a joint ownership or interest in property or fund of the sort required by §64.001(a)(3). *See Kneisley v. Intertex, Inc.,* 797 S.W.2d 343 (Tex. App.— Houston [14th Dist.] 1990, no writ) (holding competing claims to real property insufficient to fulfill joint ownership or interest requirement for receiver).

### E.     BBL Failed To Prove Insolvency, Dissolution, Or Forfeiture.

The trial court erroneously found that Texas Civil Practice & Remedies Code § 64.001(a)(5) supported the receivership. (CR p. 255) This subsection provides that a court of competent jurisdiction, which the trial court is not, may appoint a receiver for a corporation that is insolvent, is in imminent danger of insolvency, has been dissolved, or has forfeited its corporate rights. Tex. Civ. Prac. & Rem. Code § 64.001(a)(5). The record is void of evidence, or any evidence therein is clearly insufficient, upon which the trial court could properly

56

make any such findings. Further, case law indicates § 64.001(a)(5) is inapplicable to the case at bar.

**(1)    There Is No Evidence of Dissolution, Forfeiture, Insolvency, Or Imminent Insolvency Of Dream Creek.**

A trial court's evidentiary rulings are reviewed applying the abuse of discretion standard of review. *Jackson v. Van Winkle*, 660 S.W.2d 807, 810 (Tex. 1983). To obtain reversal of a judgment based upon error of the trial court in admission or exclusion of evidence, there must be a showing (1) that the trial court did in fact commit error and (2) that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. Tex. R. App. P. 81(b); *McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex. 1992). The appellate court must review the record to make this determination. *McCraw* at 758.

The record contains no evidence regarding the corporate status of Dream Creek with respect to dissolution or forfeiture. Concerning insolvency or imminent threat thereof, the record contains no direct evidence. (RR Vol 2 pp. 6-25) There is contrary evidence, however, including the court appointed auditor (admittedly from his incomplete analysis (RR Vol. 4 p. 43)), that Dream Creek had funds on hand estimated to be in the six figures, had funds after payments of accounts and sources of cash. (RR Vol. 3 pp. 5-7; Vol. 4 pp. 15-17, 20) The record also contains some evidence concerning Dream Creek's financial activity which may indirectly concern these required elements. In error, the trial court admitted

57

hearing Exhibit 1, including *inter alia*, bank statements. (RR Vol. 4 p. 8; 5 pp. 23, 29; Vol. 7) However, without laying the proper evidentiary foundation, such banking records are inadmissible hearsay and cannot sustain the propriety of the Order under § 64.001(a)(5). Tex. R. Evid. 901. Moreover, proving insolvency or being in danger thereof requires a great degree more proof than the subject bank statements provide. *Gossett v. Hamilton*, 133 S.W.2d 297, 302 (Tex. Civ. App.—Fort Worth 1939) (insolvency must be shown by entity's liabilities, assets, and testimony that the entity is unable to promptly meet its obligations). The trial court erred in overruling the hearsay objection to Exhibit 1. (RR Vol. 5 pp. 28-29)

### (2) Even If Competent Evidence Exists, Case Law Opposes A Judicial Receivership On These Facts.

Insolvency alone does not justify a receivership; there must be also some right of action existing in favor of the applicant. *Hunt v. Merchandise Mart, Inc.*, 391 S.W.2d 141 (Tex. Civ. App. —Dallas 1965, writ refused n.r.e. (receivership is necessarily ancillary to a pending principal action to establish or vindicate a right other than the appointment of a receiver); *Greenland v. Pryor*, 360 S.W.2d 423 (Tex. Civ. App.—San Antonio 1962) (party cannot require a receiver to perform functions relating to a dispute about which the appointing court is not asked to decide); *Griggs v. Brewster*, 62 S.W.2d 980 (Tex. 1933) (receivership proceeding must stand or fall with the pendency of the main suit to which it is incidental). A receiver will be appointed only when the party seeking the appointment shows a

58

right to, or interest in, the property or fund in litigation. *See Continental Homes Co. v. Hilltown Property Owners Ass'n, Inc.*, 529 S.W.2d 293 (Tex. Civ. App.—Fort Worth 1975).

Even if competent evidence is held to exist, Texas case law opposes a judicial receivership without some right in favor of the applicant. For the same reasons that BBL has no claims under the construction trust fund act and moreover lacks ownership or interest in the property or fund of the sort required by § 64.001(a)(3) because BBL is not a creditor, the trial court's appointment of a judicial receiver was error and cannot stand.

### F.    Equity Cannot Support Receivership Absent Fulfilling Statutory Requirements.

The trial court found that the Order Appointing Receiver was just and proper under Tex. Civ. Prac. & Rem. Code § 64.001(a)(6). (CR p. 255) This subsection provides that a court of competent jurisdiction, which the trial court was not, may appoint a receiver if appropriate under the "rules of equity." Tex. Civ. Prac. & Rem. Code § 64.001(a)(6). However, where, as here, specific statutory requirements exist, these must be fulfilled in order to support appointment of a receiver. Reviewing courts have held that it is an abuse of discretion to appoint a receiver merely referring to the "rules of equity" if specific statutory requirements applicable to the appointment were not fulfilled. *Mueller v. Beamalloy, Inc.*, 994 S.W.2d 855, 861 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (holding that an

additional subsection of § 64.001(a) of the Remedies Code permitting appointment of a receiver under the rules of equity did not permit the trial court to disregard specific requirements applicable to appointing a receiver over a corporation). Having demonstrated that the specific statutory requirements applicable to imposition of a receivership over Dream Creek as a domestic corporation have not been fulfilled, the trial court abused its discretion in making the appointment under Tex. Civ. Prac. & Rem. Code § 64.001(a)(6).

## CONCLUSION

The forum selection for arbitration limited the jurisdiction of the trial court. Nothing in the law of the arbitral forum, supporting arbitration, or substantive contract law authorized the trial court to establish a judicial receivership over parties in arbitration. Judicial receiverships paralleling arbitrations are not authorized and produce problems. Chapter 11 of the Texas Business Organizations Code contains exclusive, jurisdictional requirements over receiverships and should control over more general receivership provisions of the Remedies Code. The jurisdictional requirements of Chapter 11 of the Texas Business Organizations Code were not fulfilled. The trial court had no authority to impose a judicial receivership.

Even if the trial court had the requisite authority, it abused its discretion because the court in Parker County is the only court permitted to appoint a receiver

60

over Dream Creek. Further, the pleading and proof did not establish the elements necessary to sustain the order, including without limitation, the insolvency of Dream Creek; BBL's status as a creditor and joint interest owner, rather than a mere claimant; or that the receivership was necessary to prevent disorder and interference, or disorder and improper delay of the arbitration.

## PRAYER

Appellants pray that this Court will reverse the Order Appointing Receiver and remand this cause to the trial court with instructions to vacate the receivership. Alternatively, Appellants pray that this Court will issue a writ of mandamus ordering the trial court to vacate the Order Appointing Receiver and vacating the receivership. Appellants pray for general and such other relief, at law or in equity, to which they may show themselves justly entitled.

Respectfully submitted,

**DECKER JONES, P.C.**
Burnett Plaza, Suite 2000
801 Cherry Street, Unit No. 46
Fort Worth, Texas 76102
(817) 336-2400 (Telephone)
(817) 336-2181 (Facsimile)

By: _____
    Daniel L. Bates
    State Bar No: 01899900
    dbates@deckerjones.com

Frank M. Newman, Jr.
State Bar No. 14970500
fnewman@deckerjones.com

Jake L. Ramsey
State Bar No. 24083705
jramsey@deckerjones.com

Molly Johnson
State Bar No. 24092590
mjohnson@deckerjones.com

**ATTORNEYS FOR APPELLANTS**

## CERTIFICATE OF COMPLIANCE

On the 3rd day of August, 2015, the undersigned certifies that in compliance with Rule 9.4(i)(2)(B) of the Texas Rules of Appellate Procedure and upon reliance of the word count of the computer program used to prepare this document, the foregoing Appellants' Opening Brief contains approximately 14,668 words.

Daniel L. Bates

## CERTIFICATE OF SERVICE

Pursuant to the Texas Rules of Appellate Procedure, the undersigned hereby certifies that a true and correct copy of the foregoing *Appellants' Opening Brief* was served on counsel of record on August 3, 2015 in the matter indicated below:

Steven H. Thomas
Jennifer M. Larson
**McGUIRE, CRADDOCK & STROTHER, P.C.**
2501 N. Harwood, Suite 1800
Dallas, Texas 75201
sthomas@mcslaw.com
jlarson@mcslaw.com
**ATTORNEYS FOR APPELLEE, BBL BUILDERS, L.P.**
*Via electronic serve (ECF)*

Kevin Buchanan, Esq.
Matthew McDougal, Esq.
KEVIN BUCHANAN & ASSOCIATES, P.L.L.C.
900 Jackson Street, Suite 350
Dallas, TX 75202
kbuchanan@kevinbuchananlaw.com
mmcdougal@kevinbuchananlaw.com
**ATTORNEYS FOR RECEIVER**
*Via E-mail*

Honorable Martin Hoffman, District Justice
68th Judicial District Court
George L Allen Sr. Courts Building
600 Commerce St # 540
Dallas, TX 75202
**TRIAL COURT JUDGE**
*Via First Class Mail*

_____
Daniel L. Bates

10971.45001/405340

# No. 05-15-00768-CV

_____

### In The COURT OF APPEALS
### FIFTH DISTRICT OF TEXAS AT DALLAS

_____


### DREAM CREEK ENTERPRISES, INC. and
### RAMEY J. KEETH,
#### Appellants,
*vs*.

### BBL BUILDERS, L.P.,
#### Appellee.

_____

### Appeal from the 68th Judicial District Court
### of Dallas County, Texas, Cause No. DC-14-13721
### Honorable Martin Hoffman, Presiding Judge

_____


### APPENDIX IN SUPPORT OF
### APPELLANTS' OPENING BRIEF

_____

EXHIBIT "A" - Order Appointing Receiver signed on June 1, 2015 .............. 1-6

# EXHIBIT "A"

C0582 484C

| | | |
|---|---|---|
| BBL BUILDERS, L.P., | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | 68th JUDICIAL DISTRICT |
| | § | |
| DREAM CREEK ENTERPRISES, INC., | § | |
| and RAMEY J. KEETH, | § | |
| | § | |
| *Defendants.* | § | DALLAS COUNTY, TEXAS |

## ORDER APPOINTING RECEIVER

On this date, the Court considered Plaintiff's Request for Appointment of a Receiver. Having considered the request, the arguments of counsel, the admissible evidence, and the relevant legal principles, the Court is of the opinion that the request should be, and hereby is, GRANTED.

1. The Court finds that the appointment of a receiver over Dream Creek Enterprises, Inc. ("Dream Creek") is justified and proper under TEX. CIV. PRAC. & REM. CODE § 64.001(a), (3), (5), and (6).

2. The appointment of a receiver over Dream Creek is also proper under TEX. BUS. ORG. CODE § 11.404(a)(1)(A), (C), and (D).

3. The appointment of a receiver is justified and proper under TEX. CIV. PRAC. & REM. CODE § 171.086, as this matter is currently under arbitration.

4. Based on the evidence before the Court, it appears that Ramey J. Keeth is the manager and owner of Dream Creek.

5. The appointment of a receiver is necessary to ensure full and complete accounting, locate and secure any trust funds, preserve and protect the assets of

Dream Creek, preserve and protect the interests of creditors, and to manage its day-to-day affairs.

6. The Court finds that Dream Creek, as well as its creditors, guarantors, employees, and stakeholders, face a likelihood of irreparable harm if a receiver is not appointed immediately to take control over the management and operation of Dream Creek. This irreparable harm includes, but is not limited to, dissipation of the trust funds received by Defendants for the sole purpose of paying "beneficiaries" of trust funds – artisans, laborers, mechanics, contractors, subcontractors, suppliers, and materialmen. The Court finds that such further dissipation of funds would result in irreparable harm and that it is unlikely that creditors and guarantors would have a meaningful remedy at law if further dissipation occurs.

7. A receiver is necessary to realize value for Dream Creek for all interested entities.

8. Accordingly, the Court hereby appoints Albert "Tre" Black, III as a receiver (hereinafter, the "Receiver"), for Dream Creek Enterprises, Inc.

9. The Court finds that Tre Black is qualified to serve as a Receiver, and upon being sworn and a bond of $500.00 for Dream Creek being posted, shall immediately assume the rights and responsibilities as the Receiver of Dream Creek. Further, Plaintiff BBL is ordered to pay a bond in the amount of $1,000.00.

10. The Court orders, pursuant to the authorities cited in paragraphs 1, 2, and 3 above, that the Receiver is vested with all powers necessary or appropriate to carry out the Receiver's functions and duties including: (1) the power to control all property and non-exempt assets of Dream Creek Enterprises, Inc.; (2) the power to take charge

and keep possession of all non-exempt property owned or controlled by Dream Creek; (3) collect and compromise demands; (4) make transfers and payments to third parties; (5) take actions to preserve all assets of Dream Creek, including the institution of legal actions; and (6) perform all such other acts as necessary to preserve the assets of Dream Creek pursuant to Texas Law.

11. The Receiver shall take charge and possession of the business and non-exempt assets of Dream Creek.

12. The Receiver has the authority to pay all expenses incurred by Dream Creek in the course of business, to the extent determined necessary by Receiver or his agents.

13. The Receiver has authority to take possession of and receive from all accounts held by or for the benefit of Dream Creek Enterprises, Inc. any money on deposit in any financial institution to the credit of Dream Creek, and the receipt of Receiver for the funds will discharge such financial institutions from further responsibility for accounting to Dream Creek. Such accounts include, but are not limited to, the following:

- Wells Fargo account ending 6944 for Dream Creek Enterprises, Inc.

- North Texas Bank account ending 0087 for Dream Creek Enterprises, Inc.; and

- First Financial Bank account ending 5819 for Ramey Keeth up to the first $200,000.00.

14. The Receiver has the authority to hire and employ servants, agents, employees, clerks, accountants, and other professionals and to purchase merchandise,

ORDER APPOINTING RECEIVER — PAGE 3

inventory, materials, supplies, and services in connection with operating and conducting the business of Dream Creek, and to pay for them at the ordinary and usual rates and prices from the funds that may come into the Receiver's possession.

15. The Court further orders that the Receiver may negotiate for the sale or lease of the property, or any assets thereof, and conduct all day-to-day operations of Dream Creek.

16. The Receiver shall have the power to hire and fire employees, consultants, and professionals for Dream Creek. The Receiver shall have the power to negotiate with any and all creditors and claimants of Dream Creek.

17. The Receiver may, in the Receiver's discretion, seek Court approval for major or material transactions before concluding such transactions.

18. It is ordered that all banks and other financial institutions shall cooperate with all reasonable requests of the Receiver relating to implementation and enforcement of this Order, including transferring funds at Receiver's discretion and producing records related to the assets and liability of Dream Creek. The Receiver shall have the right to have signature authority on all existing bank accounts of Dream Creek.

19. It is ordered that the Receiver is authorized to open one or more bank accounts with financial institutions insured by an agency of the United States, deposit all cash and other liquid assets of Dream Creek, and make all payments and disbursements from the assets of Dream Creek held in such accounts.

20. It is further ordered that the Receiver has the sole authority to prosecute or defend any legal actions or proceedings for Dream Creek, except for the pending arbitration case styled case number 01-14-0000-3531, BBL Builders, LP, vs. Dream

Creek Enterprises, Inc. and Ramey J. Keeth. The Receiver has the sole authority to initiate any proceedings pursuant to the United States Bankruptcy Code. Any such actions in violation of this paragraph shall be null and void.

21. The Receiver and any professionals hired by Receiver shall be paid from funds and assets of Dream Creek. The Receiver shall be compensated out of the assets of Dream Creek on an hourly basis not to exceed $250 per hour and reimbursed for all reasonable and necessary expenses. If Dream Creek lacks sufficient assets or funds to timely pay the Receiver's fees and reimbursement of expenses, the Plaintiff and Defendants shall be jointly and severally liable for such fees and expenses. The Receiver shall provide a copy of his bills for fees and expenses and any invoices for fees or expenses charged by professionals or agents hired by the Receiver to all parties every thirty (30) days. Each party shall have five (5) days in which to object to the bills presented. If a party wishes to object to the bill(s) presented, the objection must be filed with the Court and set for hearing at the earliest available setting within the five (5) day period. If no objection to the Receiver's bills, or bills for professionals or agents hired by the Receiver, are made by any counsel, party represented by counsel, or party *pro se*, within the five (5) days of receipt, the Receiver is authorized to pay the bills presented from the assets of Dream Creek. Plaintiff is ordered to pay the sum of $20,000.00 in the form of a refundable retainer to The Receiver to bill against for all fees and expenses pursuant to procedure above, and subject to further order of the court.

22. Alternatively, in the event that the Receiver and any professionals hired by Receiver are paid from funds previously tendered into the registry of the court, the Receiver shall be compensated on an hourly basis not to exceed $250 per hour and be

reimbursed through the funds held within registry of the court. The Receiver shall provide a copy of his bills for fees and expenses and any invoices for fees or expenses charged by professionals or agents hired by the Receiver to all parties every thirty (30) days. Each party shall have five (5) days in which to object to the bills presented. If a party wishes to object to the bill(s) presented, the objection must be filed with the Court and set for hearing at the earliest available setting within the five (5) day period. If no objection to the Receiver's bills, or bills for professionals or agents hired by the Receiver, are made by any counsel, party represented by counsel, or party *pro se*, within the five (5) days of receipt, the Receiver is authorized to seek reimbursement through the funds previously tendered into the registry of the court.

23. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that the authority granted to the Receiver as set forth herein shall continue until further order of the Court, and that any party may petition the Court for termination of the Receivership upon a showing that the condition necessitating the appointment of the receiver as set forth herein is remedied, at which time the management of the domestic entity shall be restored to its managerial officials, along with all property, statutory, common law and equitable rights, duties, obligations, that exist and/or existed immediately prior to entry of this Order.

SO ORDERED.

DATED: June 1st, 2015.

_____
HON. MARTIN HOFFMAN
DISTRICT JUDGE